## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Case No. 17-32006

PREMIER MARINE, INC.,                                     Chapter 11

      Debtor.

## NOTICE OF EXPEDITED HEARING AND MOTION FOR ORDER AUTHORIZING POSTPETITION SECURED BORROWING AND GRANTING JUNIOR LIENS PURSUANT TO 11 U.S.C. § 364(c)(3)

TO:    Entities Specified in Local Rule 9013-3.

1.    Premier Marine, Inc. ("Debtor"), by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

### PRELIMINARY HEARING

2.    The Court will hold a hearing on this motion at 2:30 p.m. on June 22, 2017, before the Honorable Katherine A. Constantine, Courtroom 2C, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.    Any response to this motion must be filed and served prior to the hearing. **Unless a response opposing the motion is timely filed, the Court may grant the Motion without a hearing.**

### FINAL HEARING

4.    The Court will hold a **final** hearing on this motion at **10:00 a.m. on July 11, 2017,** before the Honorable Katherine A. Constantine, Courtroom 2C, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

5.      Any response to this motion must be filed and served not later than **July 6, 2017**, which is five (5) days before the time set for the Final Hearing (including Saturdays, Sundays, and holidays).  **Unless a response opposing the motion is timely filed, the Court may grant the relief requested in the Motion without a hearing.**

## JURISDICTION AND STATUTORY BASIS

6.      This Court has jurisdiction over this motion under 28. U.S.C. §§ 157 and 1334. This proceeding is a core proceeding.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The petition commencing this case was filed on June 19, 2017 (the "Petition Date"). This case is now pending before this Court.

7.      This motion arises under 11 U.S.C. §§ 105, 363 and 364, Bankruptcy Rules 4001(c) and 9014, and Local Rule 9013.  This motion is filed under Bankruptcy Rule 9013. The Debtor requests that the Court enter a preliminary and final financing orders under Bankruptcy Code sections 363 and 364(c)(3) authorizing Debtor (as borrower) to obtain postpetition superpriority, secured financing from Trusek, LLC, a Minnesota limited liability company (the "DIP Lender") in the principal amount of $2,500,000 subject to the terms of a Loan and Security Agreement, a copy of which is attached as **Exhibit A** ("Prepetition Loan Documents").  The requested relief is necessary for Debtor to resume full production capacity, meet postpetition working capital needs to preserve the value of its bankruptcy estate for the benefit of creditors and avoid immediate and irreparable harm.

## BUSINESS OF DEBTOR

8.      Premier Marine Inc., a Minnesota corporation ("Debtor") is a family owned business formed in 1992 by Robert Menne and Eugene Hallberg ("Hallberg").  For 25 years the Debtor has manufactured "Premier" brand pontoon boats in Wyoming, Minnesota.  The Debtor

sells Premier pontoons through a network of 197  independent dealers located throughout the United States and Canada.

9.     The Debtor manufactures and sells approximately 2,000 pontoons a year having generated $58,405,559 and $59,584,693 in net sales for the years ending December 31, 2016 and 2015.  The Debtor has 150 full time employees and regularly employs up to 20 part time and seasonal employees.  The Menne family controls 72.8 of the Debtor equity.  Hallberg controls the remaining 27.2% and is the Debtor's landlord.

10.     The need for reorganization in chapter 11 was precipitated by a failed acquisition of another pontoon manufacturer in 2011.  The Debtor suffered substantial losses in 2014, 2015 and 2016 attributable to the purchase and manufacture of the Palm Beach and Weeres brands in New Ulm, Minnesota, termination of manufacturing in New Ulm and the transition to manufacturing of the brands at the Debtor's Wyoming facilities.  The Palm Beach and Weeres brands were discontinued in in January 2017.

11.     The acquisition losses left the Debtor with inadequate cash to operate efficiently and profitably as it had for more than 20 years.  In response to lender and vendor pressures and a growing back log of dealer orders the Menne family solicited prospective buyers, equity partners and subordinate debt lenders.  The Debtor secured a $2,500,000 lending commitment necessary and sufficient to resume normal production.

12.     The chapter 11 was filed in response to an eviction action commenced by Hallberg for the nonpayment of rent.  The chapter 11 is necessary to attract a new equity partner, reject the Hallberg leases, consolidate manufacturing under a single roof and reorganize the business for the mutual benefit of the Debtor creditors, employees and dealer network.

## SUMMARY OF PROPOSED DIP STIPULATION

13.     Prior to the Petition Date, the DIP Lender loaned $500,000 of the $2,500,000 commitment to the Debtor secured by a lien in substantially all assets of the Debtor ("Prepetition Indebtedness").  The Prepetition Indebtedness is evidenced by the Prepetition Loan Documents. The lien securing the Prepetition Indebtedness is subordinate to the blanket lien in favor of American Bank of the North ("ABN") and subordinate to other secured creditors with perfected liens in certain assets of the Debtor.

14.     The DIP Lender has agreed to loan the Debtor an additional $2,000,000 upon execution of a Stipulation and Agreement Regarding Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 363 and/or 364 for Interim and Final Orders Authorizing (I) Debtor-in-Possession Financing and/or (II) Limited Use of Cash Collateral and Granting Adequate Protection in the substantially the form attached as **Exhibit B** ("DIP Stipulation") and approval of this Motion. Proceeds of the DIP Stipulation will be used only for payment of those costs and expenses that is necessary to avoid immediate and irreparable harm, as described in detail in the budget ("Budget") attached to the Debtor's Motion for Expedited Hearing for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection filed the same date as this motion and as further supported by the Unsworn Declaration of Richard Gallagher in Support of the Debtor's Motion for Expedited Hearing For Interim and Final Orders Authorizing Use of Cash Collateral and Granting Cash Collateral and this motion.

15.     A summary of the DIP Stipulation terms is as follows, provided that the following description is not intended to modify or amend the terms of the DIP Stipulation:

a.     <u>Interest Rate</u>. The Note bears interest at the rate of 12% per annum and is payable monthly. Upon an event of default, the rate increases to 14% per annum.

b.      <u>Contingent Principal Payments</u>. Principal payments are required (i) in the amount of net proceeds received by the Debtor from asset sales outside the ordinary course upon closing of the sale and (ii) in an amount equal to net proceeds of insurance claims (after payment of senior liens) upon receipt.

c.      <u>Payment of DIP Lender Costs and Attorneys' Fees</u>. Debtor is required to pay reasonable attorneys' fees and costs incurred by DIP Lender in connection with making the DIP Stipulation and monitoring the case.

d.      <u>Collateral</u>.  As a condition to superpriority status the DIP Stipulation, the DIP Lender requires that DIP Stipulation be granted superpriority administrative expense priority and be secured by all of the Debtor's prepetition and postpetition assets, including but not limited to all present and future inventory, accounts, equipment and general intangibles, and all proceeds thereof (but not claims arising under chapter 5 of the Bankruptcy Code), pursuant to Section 364(c) (provided however that the super priority administrative claim status and post-petition liens will be subordinate to payment of all amounts reflected on the Budget which are incurred prior to an event of default occurring in connection with the DIP Stipulation plus up to a maximum of an additional $50,000 to cover US Trustee and professional fees of the Debtor and committee incurred after an event of default). The proposed lien will be junior in priority to the perfected lien of ABN and other secured creditors as of the Petition Date and all replacement liens granted to ABN and the other secured prepetition creditors as adequate protection (if any). Entry of an order approving this Motion must constitute proper perfection of the DIP Stipulation liens under the terms of the DIP Stipulation documents.

e.      <u>Maturity</u>.  The DIP Stipulation is due and payable in full at the earliest of (i) a sale of substantially all assets of Debtor; (ii) confirmation of a plan of reorganization; (iii) conversion

of this case to chapter 7; (iv) appointment of chapter 11 trustee; or (v) the first anniversary of the Petition Date.

f.      <u>Guaranties</u>.  The DIP Stipulation is conditioned upon a personal guaranty from Robert J. and Betty J. Menne.

g.      <u>Events of Default</u>. It will constitute an event of default under the DIP Stipulation if (i) any monthly interest payment is not received by the 28th day of the following month, (ii) a final order approving the DIP Stipulation is not entered by July 31, 2017, (iii) Debtor's authority to use cash collateral is revoked or expires, (iv) appointment of a chapter 11 trustee, (v) approval of any other super priority administrative expense or postpetition lien in the collateral, (vi) conversion of the case to Chapter 7, (vii) payment of any prepetition debt other than those payments permitted by Debtor's first day motions and claims entitled to administrative priority under Section 503(b)(9) and (viii) any judgment is entered in favor of a third party for post-petition obligations in excess of $1,000,000. Upon an event of default, the DIP Lender may accelerate the DIP Stipulation, without notice, in which case the DIP Stipulation will be immediately due in full.

h.      <u>Miscellaneous</u>. The DIP Stipulation requires late fees, insurance, retention of professionals, financial reporting, and other typical loan covenants.

## **REQUESTED RELIEF**

16.     Debtor seeks authority to enter into the DIP Stipulation outside the ordinary course of business pursuant to Sections 363 and 364.  The Debtor requests that the Court enter a preliminary order and a final order authorizing Debtor (as borrowers) to obtain postpetition secured financing from the DIP Lender in the principal amount of $2,000,000 pursuant to Bankruptcy Code section 364(c)(3).  The requested relief is necessary for Debtor to meet its postpetition working capital needs and to preserve the value of its bankruptcy estate for the benefit of creditors. Failure

to obtain the DIP Stipulation will result in immediate and irreparable harm.  The specific uses and necessary timing for the proceeds of the DIP Stipulation are identified in the Budget.

17.     The terms and conditions of the DIP Stipulation are fair and reasonable and were negotiated by the parties in good faith and at arm's length.

18.     Despite significant efforts, Debtor has been unable to obtain postpetition financing on an unsecured basis, as merely an administrative expense or on terms and conditions more favorable than those set forth in the DIP Stipulation.  In support of this motion, the Debtor has filed the Budget and the Budget is incorporated herein by reference.

19.     Without the DIP Stipulation, the Debtor will be unable to continue to operate as a going concern.

## EXPEDITED RELIEF

20.     In order to operate in the ordinary course, preserve the going concern value of its operations and avoid immediate and irreparable harm the Debtor must have authority to enter into the DIP Stipulation and to borrow $1,250,000 pending a **final hearing** scheduled for **July 6, 2017**. There is good cause to consider the preliminary relief on an expedited basis.

21.     The Debtor may offer additional evidence in support of this Motion, including the testimony of Lori Melbostad, the President of the Debtor, and Richard Gallagher, the Debtor's financial advisor, if such is necessary in connection with this Motion.

**WHEREFORE**, the Debtor moves the Court for a preliminary order:

1.     Granting Debtor the authority to enter into the DIP Stipulation;

2.     Approving all of the terms and conditions of the DIP Stipulation;

3.     Authorizing the Debtor to grant liens under and in accordance with the DIP Stipulation pending the Final Hearing on the motion in an amount not to exceed $1,250,000 and

only for the requirements necessary to avoid immediate and irreparable harm as stated in the

Budget; and

4.       Granting the other relief requested in this motion and granting Debtor such other

legal and equitable relief to which it is entitled.


Dated: June 20, 2017                    RAVICH MEYER KIRKMAN McGRATH
                                        NAUMAN & TANSEY,
                                        A PROFESSIONAL ASSOCIATION

                                        By /e/  Michael F. McGrath #168610
                                             Will R. Tansey #323056

                                        150 S. Fifth Street, Suite 3450
                                        Minneapolis, MN 55402
                                        Telephone:     (612) 332-8511
                                        Facsimile:     (612) 332-8302

                                        ATTORNEYS FOR DEBTOR

## VERIFICATION

I, Lori J. Melbostad, the President of the Debtor, declare under penalty of perjury that the facts set forth in the foregoing Notice of Hearing and Motion for Expedited Hearing and for Order Authorizing Secured Borrowing and Granting Junior Liens Pursuant to 11 U.S.C. §§ 364(c)(3), are true and correct.

Executed on:  June 20, 2017              /s/_____
                                         Lori J. Melbostad

# EXHIBIT A

## LOAN AND SECURITY AGREEMENT

Dated as of June 16, 2017

This Loan and Security Agreement (the "Agreement") is entered by and between Premier Marine, Inc. (the "Borrower"), and Trusek LLC ("Lender").

ARTICLE I
Definitions

Section 1.01  Definitions.  For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     The terms defined in this Article have the meanings assigned to them in this Article, and include the plural as well as the singular; and

(b)     All accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles.

(c)     "Advance" means an advance by Lender to the Borrower pursuant to this Agreement.

(d)     "Bankruptcy Code" means 11 U.S.C. § 101 et. seq.

(e)     "Closing Date" means June 16, 2017.

(f)     "Collateral" shall mean all assets of the Borrower, including, without limitation, present and future accounts, chattel paper, instruments, payment intangibles, general intangibles, records, inventory, equipment of every kind and description, furniture and fixtures, deposit accounts, money, investment property, letters of credit, notes, tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof.

(g)     "Commencement Date" shall mean the date of the first Advance to Borrower under this Agreement.

(h)     "Event of Default" has the meaning specified in Section 7.01.

(i)     "Guaranty" means the guaranty dated of even date herewith of Robert J. Menne, Jr. and Betty J. Menne, shareholders of Borrower jointly holding more than Fifty Percent (50%) of Borrower's common stock (collectively hereinafter referred to as "Guarantor"), pursuant to which Guarantor guarantees payment to Lender of the amounts payable by the Borrower to Lender pursuant to this Agreement.

(j)     "Obligations" shall mean and refer to all of Borrower's obligations under this Agreement as well as all loans from time to time made by Lender to Borrower

and to others at the request of or for the account of or for the benefit of Borrower, all other debts, extensions of credit, liabilities and obligations of Borrower to Lender of every kind and description (whether or not evidenced by a note or other instrument and whether or not for the payment of money), direct or indirect, absolute or contingent, joint or several, primary or secondary, due or to become due, now existing or hereafter arising, including, without limiting the generality of the foregoing, any liability of Borrower to Lender as a guarantor of indebtedness or liabilities of others and all interest, fees, charges and expenses payable by Borrower hereunder, or any supplement or amendment hereto or any other agreement between Borrower or Lender or any instrument evidencing any of the foregoing.


ARTICLE II
Amount and Terms of the Loan

Section 2.01  Loan Amount.  Lender agrees, on the terms and subject to the conditions hereinafter set forth, to lend Borrower, the principal sum of Five Hundred Thousand and no/100 Dollars ($500,000.00)

Section 2.02  Interest Rate. The unpaid principal balance shall bear interest at an annual rate equal to Twelve Percent (12%). Interest will be computed for the actual number of days principal is unpaid, using a daily factor obtained by dividing the stated interest rate by 360.

Section 2.03  Default Rate. After an Event of Default (as defined in Section 7.01, *infra*), but only for so long as such Event of Default continues, the unpaid principal balance shall bear interest at an annual rate equal to Fourteen Percent (14%). Interest will be computed for the actual number of days principal is unpaid, using a daily factor obtained by dividing the stated interest rate by 360.

Section 2.04  Origination Fee. Borrower hereby agrees to pay Lender an amount equal to Two and One-Half Percent (2.5%) of the Loan Amount on or before the Closing Date as an Origination Fee.

Section 2.05  Monthly Payment/Adequate Protection Payment. Borrower shall make monthly payments, in an amount equal to the monthly accrued interest on the outstanding principal balance, to Lender on or before the 28th day of each month commencing in June 2017 and continuing through termination of this Agreement. Any payment required hereunder shall be made to Lender in immediately available funds.  Borrower agrees that the amount shown on the books and records of Lender as being the outstanding principal balance on the Loan shall be prima facie evidence of the principal amount of the Loan then outstanding.

Whenever any payment to be made hereunder shall be stated to be due on a Saturday, Sunday or a holiday for Lender under the laws of the State of Minnesota, such payment may be made on the

next succeeding Lender business day, and such extension of time shall in such case be included in the computation of payment of interest or the fees hereunder, as the case may be.

Section 2.06  Late Fee. If any payment due hereunder is not made on or before the date due, Borrower shall pay to Lender a Late Fee of Ten Percent (10%) of the amount of the overdue payment to compensate Lender for the costs related to handling the overdue payment. Collection of the Late Fee shall not be deemed to be a waiver of Lender's right to declare an Event of Default hereunder.

Section 2.07  Additional Mandatory Principal Payments. In addition to the Monthly Payment required by Section 2.05, *supra*, Borrower shall also make Additional Mandatory Principal Payments on a monthly basis, on or before the 28th day of each month commencing in June 2017 and continuing through termination of this Agreement, as follows:

(a) In an amount equal to the net sale proceeds from the sale of any assets of the Borrower, other than sales of Borrower's products in the regular and ordinary course of Borrower's business,  during the preceding month after payments required to any senior lienholder;

(b) In an amount equal to the net insurance proceeds received by the Borrower during the preceding month for damage or loss to liened assets of the Borrower after payments required to any senior lienholder;

(c) For reasonable expenses incurred by the Lender as professional fees in connection with this Agreement; and

(d) For reasonable expenses incurred by Lender in monitoring its Collateral

Section 2.08  Grant of Security Interest. To secure the payment and performance of each and every Obligation of every type and description which Borrower may now or at any time hereafter owe to Lender, including, but not limited to, its Obligations hereunder, Borrower hereby grants Lender a security interest in the Collateral.  Borrower authorizes Lender to record any UCC-1 financing Statements, continuances and other instruments which Lender determines are necessary or appropriate to perfect its security interests.  Until all Obligations have been fully paid and performed, whether or not this Agreement has been terminated as hereinafter provided, Lender shall have and retain its security interest and lien in and assignment of all Collateral, whether or not any of such Collateral is deemed by Lender to be eligible for loan purposes.

The Security Interest granted herein shall be senior in priority to all other liens in the Collateral except for the lien against any Collateral held by American Bank of the North or its assignee (the "ABN Lien").

Section 2.09  Maturity Date. This Agreement shall mature, and the outstanding principal balance together with any accrued interest and/or late fees shall be immediately due and payable, upon the earliest of:

3

(i) the closing of a sale of substantially all of the assets of the Borrower's business;

(ii) the effective date of a confirmed Chapter 11 plan of reorganization in a subsequent Chapter 11 bankruptcy case commenced by, or on behalf of, the Borrower;

(iii) the conversion of any subsequent Chapter 11 bankruptcy case commenced by, or on behalf of, the Borrower from Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; or

(iv) June 16, 2018.

Section 2.10   Acceleration.   Lender shall have the right to accelerate the Obligations owing under this Agreement, and the outstanding principal balance together with any accrued interest and/or late fees shall be immediately due and payable, upon the occurrence of any Event of Default as set forth in Section 7.01 below.

Section 2.11   Financial Statement.  Borrower shall provide Lender with monthly financial statements on or before the first business day after the 19th day of each month of this Agreement. For purposes of this Section, any Monthly Operating Report required to be filed by Borrower in any subsequent bankruptcy case shall satisfy the Borrower's requirements pursuant to this Section.

Section 2.12   Retention of Professionals.  Borrower agrees that in the event it files a petition for relief pursuant to Chapter 11 of the Bankruptcy Code it, as Debtor-in-Possession, will seek retention of GuideSource or another financial advisor acceptable to Lender to serve as financial advisor to the Debtor-in-Possession

Section 2.13   Offset.   Upon the termination of this Agreement, Lender may retain any monies then due from Lender to the Borrower for a period not to exceed One Hundred Twenty (120) days, as security for full payment of all the Borrower's Obligations, and all obligations, debts, claims or liabilities of any nature then owing, or thereafter found to be owing by the Borrower to Lender.  The amount of all obligations, debts, claims, or liabilities shall then be deducted from any monies due the Borrower by Lender.

ARTICLE III
Conditions of Lending

Section 3.01   Conditions Precedent to the Initial Advance.   The obligation of Lender to make its initial Advance pursuant to this Agreement is subject to the condition precedent that Lender shall have received on or before the day of such Advance all of the following, each dated (unless otherwise indicated) such day, in form and substance satisfactory to Lender:

4

(a)     This Loan and Security Agreement properly executed on behalf of the Borrower.

(b)     A certified copy of the resolutions of the Board of Directors of the Borrower evidencing approval of this Agreement and other matters contemplated hereby.

(c)     A signed copy of a certificate of the Secretary or an Assistant Secretary of the Borrower which shall certify the names of the officers of the Borrower authorized to sign this Agreement and the other documents or certificates to be delivered pursuant to this Agreement by the Borrower or any of its officers, together with the true signatures of such officers.  Lender may conclusively rely on such certificate until it shall receive a further certificate of the Secretary or Assistant Secretary of the Borrower canceling or amending the prior certificate and submitting the signatures of the officers named in such further certificate.

(d)     A Certificate of Good Standing from the Secretary of State of Minnesota as to the Borrower and copies of the Articles of Incorporation and Bylaws of the Borrower, certified by the Secretary or an Assistant Secretary of the Borrower as being true and correct copies thereof.

(e)     The Guaranty executed by Guarantor.

(f)     The representations and warranties contained in Article IV are correct on and as of the date of such Advance;

(g)     No event has occurred and is continuing, or would result from such Advance, which constitutes an Event of Default or would constitute an Event of Default but for the requirement that notice be given or time elapse or both;

ARTICLE IV
Representations and Warranties

The Borrower represents and warrants to Lender as follows:

Section 4.01  Corporate Existence and Power.  The Borrower is a corporation duly formed, validly existing and in good standing under the laws of Minnesota, and is duly licensed or qualified to transact business in all jurisdictions where the character of the property owned or leased or the nature of the business transacted by it makes such licensing or qualification necessary.  The Borrower has all requisite power and authority, corporate or otherwise, and has obtained all licenses and permits necessary to conduct its business, and to execute and deliver, and to perform all of its obligations under this Agreement.

Section 4.02  Authorization of Borrowing; No Conflict as to Law or Agreements.  The execution, delivery and performance by the Borrower of this Agreement and the borrowing hereunder have been duly authorized by all necessary corporate action and will not (i) require any consent or approval of the stockholders of the Borrower, or any authorization, consent or approval by any governmental department, commission, board, bureau, agency or

5

instrumentality, domestic or foreign, (ii) violate any provision of any law, rule or regulation or of any order, writ, injunction or decree presently in effect having applicability to the Borrower or to the Articles of Incorporation or Bylaws of the Borrower, (iii) except under a Business Loan Agreement and a Business Loan Agreement(Asset Based), each dated May 30, 2014, between Borrower and American Bank of the North, result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease or instrument to which the Borrower is a party or by which it or its properties may be bound or affected, or (iv) except under Section 2.08 above, result in, or require, the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance of any nature upon or with respect to any of the properties now owned or hereafter acquired by the Borrower.

Section 4.04  Legal Agreements.  This Agreement constitutes, when executed and delivered by the Borrower hereunder, a legal, valid and binding obligation of the Borrower enforceable against the Borrower in accordance with the respective terms.

Section 4.05  Subsidiaries.  The Borrower has no subsidiaries.

Section 4.06  Financial Condition.  The Borrower and Guarantor have heretofore furnished certain financial statements to Lender.  Said financial statements fairly represent the financial condition of the Borrower and Guarantor as of the dates thereof and the results of Borrower's operations for the periods then ended, and were prepared in accordance with generally accepted accounting principles.

Section 4.07  Adverse Change.  There has been no material adverse change in the business, properties or condition (financial or otherwise) of the Borrower of Guarantor since the date of the latest financial statement referred to in Section 4.06.

Section 4.08  Litigation.  Except for the eviction proceedings against Borrower by Hallberg, Inc. and Hallberg Marine, Inc., previously disclosed to Lender, there are no actions, suits or proceedings pending or, to the knowledge of the Borrower or Guarantor, threatened against or affecting the Borrower or the Guarantor or the properties of the Borrower or Guarantor before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to the Borrower or Guarantor, would have a material adverse effect on the financial condition, properties, or operations of the Borrower or Guarantor.

Section 4.09  Taxes.  The Borrower has filed all federal, state and local tax returns which to the knowledge of the officers of such Borrower are required to be filed, and the Borrower has paid or caused to be paid to the respective taxing authorities all taxes as shown on said returns or on any assessment received by it to the extent such taxes have become due.

Section 4.10  Titles and Liens.  The Borrower and Guarantor have good title to each of the properties and assets assigned to Lender pursuant to this Agreement free and clear of all liens and encumbrances of any kind and nature whatsoever, other than the ABN Lien.

Section 4.12  Other Security Interests.  Except as set forth herein or otherwise disclosed to Lender in writing, there are no security interests or liens against the property covering the Collateral.

ARTICLE V
Affirmative Covenants of the Borrower

So long as this Agreement shall remain in effect or any Obligation hereunder shall be outstanding, the Borrower will comply with the following requirements, unless Lender shall otherwise consent in writing:

Section 5.01  Financial Statements.  The Borrower shall provide Lender the Financial Statements required by Section 2.11.

Section 5.02  Books and Records; Inspection and Examination.  The Borrower will keep accurate books of record and accounts for itself in which true and complete entries will be made in accordance with generally accepted accounting principles consistently applied and, upon request of Lender, will give any representative of Lender access to, and permit such representative to examine, copy or make extracts from, any and all books, records and documents in its possession, to inspect any of its properties and to discuss its affairs, finances and accounts with any of its principal officers, all at such times during normal business hours and as often as Lender may reasonably request.

Section 5.03  Compliance with Laws.  The Borrower will comply with the requirements of applicable laws and regulations, the noncompliance with which would materially and adversely affect its business or its financial condition.

Section 5.04  Payment of Taxes and Other Claims.  The Borrower will pay or discharge all taxes, assessments and governmental charges levied or imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which penalties attach thereto and all lawful claims for labor, materials and supplies which, if unpaid, might by law become a lien or charge upon any properties of the Borrower; provided, that the Borrower shall not be required to pay any such tax, assessment, charge or claim whose amount, applicability or validity is being contested in good faith by appropriate proceedings.

Section 5.05  Insurance.  The Borrower will obtain and maintain insurance with insurers believed by the Borrower to be responsible and reputable, in such amounts and against such risks as is usually carried by companies engaged in similar business and owning similar properties in the same general areas in which the Borrower operates, and shall provide Lender, upon Lender's request from time to time, with a certificate of insurance confirming the existence of such insurance.  Without limiting the foregoing, Borrower will maintain property insurance with coverage satisfactory to Lender to insure the assets of the Borrower, and to provide Lender with a certificate of insurance confirming said coverage on or before January 1 and July 1 of each year and within ten (10) days of any written request from Lender to the Borrower for such confirmation.

7

Section 5.06 <u>Preservation of Corporate Existence</u>.  The Borrower will preserve and maintain its corporate existence and all of its rights, privileges and franchises; provided, however, that the Borrower shall not be required to preserve any of its rights, privileges and franchises if its Board of Directors shall determine that the preservation thereof is no longer desirable in the conduct of the business of the Borrower and that the loss thereof is not disadvantageous in any material respect to Lender as a holder of the Revolving Loan.  Borrower shall promptly notify Lender in writing prior to any change in Borrower's name or corporate structure.

ARTICLE VI<br>Negative Covenants

So long as this Agreement shall remain in effect or any Obligation hereunder shall be outstanding, the Borrower agrees that, without the prior written consent of Lender:

Section 6.01 <u>Sale of Assets</u>.  The Borrower will not sell, lease, assign, transfer or otherwise dispose of all or a substantial part of its assets (whether in one transaction or in a series of transactions) to any other Person.   For the avoidance of any doubt or confusion in that regard, this Section 6.01 does not preclude Borrower from selling its products in the regular and ordinary course of its business.

Section 6.02 <u>Consolidation and Merger</u>.  The Borrower will not consolidate with or merge into any Person, or permit any  other Person to merge into it, or acquire (in a transaction analogous in purpose or effect to a consolidation or merger) all or substantially all the assets of any other Person.

Section 6.03 <u>Restrictions on Nature of Business</u>.  The Borrower will not engage in any line of business materially different from that presently engaged in by the Borrower.

Section 6.04 <u>Ownership Transfers</u>.  No part of the legal, beneficial, or equitable ownership of Borrower shall be changed by sale, conveyance, transfer, assignment, or encumbrance without the prior written consent of Lender.

ARTICLE VII<br>Events of Default, Rights and Remedies

Section 7.01 <u>Events of Default</u>.  "Events of Default," wherever used herein, means any one of the following events:

(a)     Failure to make any payment  required hereunder within five (5) days of the date on which such payment becomes due and payable;

(b)     Any representation or warranty made by the Borrower in this Agreement or by the Borrower (or any of its officers) in any certificate, instrument, or statement

8

contemplated by or made or delivered pursuant to or in connection with this Agreement, shall prove to have been incorrect in any material respect when made;

(c) Default in the performance, or breach, of any covenant or agreement of the Borrower in this Agreement, other than a covenant or agreement to make a payment required hereunder, which remains uncured for ten (10) days following receipt of written notice thereof from Lender;

(d) The rendering against the Borrower or any Guarantor of a final judgment, decree or order for the payment of money in excess of Ten Thousand Dollars ($10,000.00) and the continuance of such judgment, decree or order unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(e) Any Guarantor shall sell, transfer, convey, assign or otherwise dispose of any of his/her or its shares of stock in the Borrower (whether in one transaction or a series of transactions and whether voluntarily or involuntarily);

(f) With the exception of the security interest granted in Section 2.08 above and the ABN Lien, any lien or encumbrance shall be filed against Borrower, or any property given as Collateral pursuant to this Agreement;

(g) The filing of any local, state or federal tax lien against Borrower;

(h) The failure of Borrower to file a petition for relief pursuant to Chapter 11 of the Bankruptcy Code on or before June 30, 2017; and

(i) The filing of a Chapter 11 plan of reorganization which provides for less than full payment of the Obligations owing hereunder as of the confirmation date of such Chapter 11 plan.

Section 7.02  <u>Rights and Remedies</u>.  Upon the occurrence of an Event of Default or at any time thereafter until such Event of Default is cured to the written satisfaction of Lender, Lender may exercise any or all of the following rights and remedies:

(a) Lender may, by notice to the Borrower, declare this Agreement to be terminated, whereupon the same shall forthwith terminate;

(b) Lender may, by notice to the Borrower, declare the entire unpaid principal amount of all Obligations then outstanding, all interest accrued and unpaid thereon, and all other amounts payable under this Agreement to be forthwith due and payable, whereupon the Obligations, all such accrued interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower.

9

(c)     Lender may, without notice to the Borrower and without further action, apply any and all money owing by Lender to the Borrower to the payment of the principal amounts of the Obligations then outstanding, including interest accrued thereon, and of all other sums then owing by the Borrower hereunder, all in such order as Lender shall determine; and

(d)     Lender may exercise and enforce its rights and remedies under this Agreement.

ARTICLE VIII
Miscellaneous

Section 8.01  No Waiver; Cumulative Remedies.  No failure or delay on the part of Lender in exercising any right, power or remedy hereunder or under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

Section 8.02  Amendments, Etc.  No amendment, modification, termination or waiver of any provision of this Agreement or consent by the Borrower to any departure therefrom shall be effective unless the same shall be in writing and signed by Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

Section 8.03  Addresses for Notices, Etc.  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for hereunder shall be in writing and mailed or delivered to the applicable party at its address indicated below:

If to the Borrower:

Premier Marine, Inc.
26612 Fallbrook Ave
Wyoming, MN 55092
Attn: Lori Melbostad, President

With a copy to:

Ravich Meyer Kirkman McGrath Nauman & Tansey, P.A.
150 South Fifth Street, Suite 3450
Minneapolis, MN 55402
Attn:  Michael F. McGrath

If to Lender:
Trusek, LLC
C/O Cameron Lallier

10

Foley & Mansfield, PLLP
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401

or, as to each party, at such other address as shall be designated by such party in a written notice
to the other party complying as to delivery with the terms of this Section. All such notices,
requests, demands and other communications shall, when mailed, be effective when deposited in
the mails, addressed as aforesaid, except that notices or requests to Lender pursuant to any of the
provisions of Article II shall not be effective until received by Lender.

Section 8.04   Costs and Expenses.  The Borrower agrees to pay on demand all reasonably
out-of-pocket expenses of legal counsel retained by Lender in connection with the enforcement
of this Agreement and the other instruments and documents to be delivered hereunder and
thereunder.

Section 8.05   Execution in Counterparts.  This Agreement may be executed in any
number of counterparts, each of which when so executed and delivered shall be deemed to be an
original and all of which counterparts of this Agreement, as the case may be, taken together,
shall constitute but one and the same instrument.

Section 8.07   Binding Effect, Assignment.  This Agreement shall be binding upon and
inure to the benefit of the Borrower and Lender and their respective successors and assigns,
except that the Borrower shall not have the right to assign its rights hereunder or thereunder or
any interest herein or therein without the prior written consent of Lender.  Lender may assign its
rights and obligations under this Agreement.

Section 8.08   Governing Law.  This Agreement shall be governed by, and construed in
accordance with, the laws of the State of Minnesota.

Section 8.09   Jurisdiction.  Borrower agrees that the state and federal courts sitting in the
State of Minnesota shall have exclusive jurisdiction to hear and determine any claims or disputes
between the Borrower and Lender pertaining directly or indirectly to this Agreement, the
indebtedness evidenced hereby, or to any matter arising therefrom and Borrower hereby waives
any objection to the inconvenient forum.

Section 8.10   Waiver of Trial by Jury.  The Borrower and Lender each waives any right
to a TRIAL BY JURY in any action to hear and determine any claims or disputes between
Borrower and Lender pertaining directly or indirectly to this Agreement, the indebtedness
evidenced hereby, or to any matter arising therefrom and Borrower agrees that any action or
proceeding shall be tried before a Court and not before a Jury.

Section 8.11   Severability of Provisions.  Any provision of this Agreement which is
prohibited or unenforceable shall be ineffective to the extent of such prohibition or
unenforceability without invalidating the remaining provisions hereof.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Section 8.12 Headings. Article and Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

PREMIER MARINE INC (Borrower)

By:

Lori Melbostad

Its: President

TRUSEK LLC

By:

Terry Astleford

Its: *CHIEF MANAGER*

12

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: | Case No.:  17-_____ |
| Premier Marine, Inc., | Chapter 11 |
| Debtor. | Hearing Set For: June __, 2017 at _____ |

**STIPULATION AND AGREEMENT REGARDING**
**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364**
**FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION**
**FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING**
**ADEQUATE PROTECTION**

THIS STIPULATION AND AGREEMENT (the "Stipulation") REGARDING DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION (the "Motion") is entered into by and among Premier Marine, Inc., the Debtor and Debtor-in-Possession (the "Debtor" or "DIP" or "Borrower") in the above-captioned Chapter 11 case (the "Bankruptcy Case"), and Trusek, LLC ("Trusek" or "Lender"). Accordingly, Debtor and Lender stipulate as follows:

## RECITALS:

1.  On June __, 2017 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for reorganization under Chapter 11 of the United States Code (the "Code"). The Debtor continues to operate their businesses as Debtor-in-possession pursuant to sections 1107(a) and 1108 of the Code. No trustee, examiner, or official committees have been appointed in the Bankruptcy Cases.

2.  As of the Petition Date, Borrower was indebted to Lender by reason of the Advances in the principal amount of approximately $500,000.00, plus those costs and expenses which Lender incurred prior to the Petition Date, and for which Lender is entitled to recover pursuant to the Pre-Petition Loan Documents. All amounts referred to in this paragraph are collectively referred to herein as the "Pre-Petition Indebtedness". Debtor is obligated to repay the Pre-Petition Indebtedness according to the terms of the Pre-Petition Documents, as defined below. Copies of the Pre-Petition Loan Documents are attached as Group Exhibit A.[1]

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Pre-Petition Loan Documents.

3.      Prior to the Petition Date, Debtor entered into that certain loan agreement, known as the Loan and Security Agreement (the "<u>Agreement</u>") with Lender,  dated June 16, 2017, as amended from time to time, whereby Debtor granted Lender a security interest in all of its assets.  The Agreement is secured by, among other things, validly perfected, second-priority security interests in all of the Debtor's assets. Lender filed a UCC-1 financing statement on or about June 16, 2017 listing substantially all the Debtor's assets and proceeds thereof (the "<u>Financing Statement</u>"). Copies of the  Agreement, the Guarantees and the Financing Statement are collectively referred to as the "<u>Pre-Petition Loan Documents</u>". The failure to reference any particular loan document or provision of any loan document shall not affect the validity or enforceability of any such document or provision.

4.      Certain parties have also filed UCC Financing Statements of record against Debtor listing as collateral personal property, and proceeds thereof (which may include, *inter alia*, accounts, lease proceeds, contract rights and rights to money) and, as such, may claim to have an interest in Debtor's cash collateral. A copy of the UCC search is attached as Exhibit B. These parties are being given notice of the motion out of an abundance of caution, but nothing contained herein constitutes an admission of the extent, validity, or priority of any of the foregoing parties' asserted security interests, liens, collateral positions, contracts or claims. Likewise, nothing contained herein is intended to interrupt the status, validity, priority or extent of the foregoing parties' asserted security interests, liens, collateral positions, contracts or claims.

5.      The Debtor is seeking to incur debt by borrowing from Trusek post-petition, under the same terms and conditions as they borrowed from Trusek prepetition (the "<u>DIP Financing</u>").  Without the DIP Financing, the Debtor will not have the funds necessary to operate their business, maintain assets, or pay employees, payroll taxes, insurance, utilities, suppliers and other vendors, overhead, lease expenses and other expenses required for the reorganization of the Debtor's businesses and to maximize the value of the Debtor's estate.

6.      Pursuant to Section 364(a) and 364(b) of the Code, Debtor has attempted, and is unable to obtain either unsecured credit or unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense in the amounts and on as favorable terms as are being agreed to by Trusek.

7.      In order to avoid immediate and irreparable harm to the Debtors' estates that will occur if DIP Financing is not immediately approved, on an interim basis, the Debtors and Lender have entered into the Stipulation for the authorization for immediate DIP Financing for normal operating purposes, in exchange for the adequate protection set forth therein.

8.      Lender has indicated a willingness to extend credit to Debtor, but only under the terms and conditions set forth in this Stipulation.  Debtor believes that, under the circumstances, the following terms and conditions are a fair and reasonable response to Debtor's request for financial assistance.

9.      Entry of an interim order authorizing Debtor to enter into the agreements contemplated by this Stipulation will minimize disruption of Debtor as a "going concern," will increase the possibilities for a successful reorganization, and, therefore, is in the best interests of the estates and their creditors.  Debtor represents that no financing is available on terms and conditions more favorable than offered by Lender.

10.     The financing arrangements pursuant to which Advances and other financial accommodations will be made and extended to the Debtor have been negotiated at arms-length and in "good faith" (within the meaning of Section 364(e) of the Code) by and between Lender and the Debtor; accordingly, Lender, in making advances pursuant to this Stipulation, is entitled to the protection described in Section 364(e) of the Code.

11.     The Debtor and Lender desire the authorization of the Court to enter into the agreements contemplated by this Stipulation, and, therefore, further stipulate to the Court as follows:

AGREEMENT:

1.      Debtor may continue to request Advances and seek other financial accommodations from Lender (collectively, the "Post-Petition Indebtedness") on the terms set forth herein. Lender shall be permitted, in Lender's sole discretion, to make Advances to Debtor. Debtor is authorized to obtain loans and other financial accommodations from Lender. Notwithstanding the foregoing, the maximum amount of Advances required to be made by Lender, including both the Pre-Petition Indebtedness and Post-Petition Indebtedness, shall not exceed Two Million Five Hundred Thousand Dollars and No Cents ($2,500,000.00)

2.      All of the Pre-Petition Loan Documents are deemed and agreed to be, and shall be construed and considered to be, agreements by and between the Debtor and Lender with respect to the Post-Petition Indebtedness.  To the extent not inconsistent with the terms of this Stipulation, the terms and conditions of the Pre-Petition Loan Documents are incorporated herein and made a part hereof by this reference, are hereby ratified and approved, shall continue in full force and effect with respect to the Pre-Petition Indebtedness, shall govern the Post-Petition Indebtedness and shall be deemed and held to be enforceable as against the Debtor.  Accordingly, to the extent not inconsistent with this Stipulation, Debtor shall perform pursuant to, and comply with, the terms of the Pre-Petition Loan Documents with respect to the Post-Petition Indebtedness and shall obtain financial accommodations from the Lender as Post-Petition Indebtedness in accordance with the terms and provisions of the Pre-Petition Loan Documents. All Post-Petition Indebtedness and all other advances and other financial accommodations extended to Debtor by Lender, including without limitation, the Pre-Petition Indebtedness, shall be subject to the fee schedule, terms of payment, limitations and other terms and conditions set forth in the Pre-Petition Loan Documents, except as expressly modified hereby.

**Page 3 of 13**

3. After July 31, 2017, no portion of the Post-Petition Indebtedness shall be used to fund fees or expenses incurred by any entity, including the Debtor and professionals retained by Debtor, in:  (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Pre-Petition Collateral or Post-Petition Collateral (as defined below) once a post-petition event of default has occurred,  (2) incurring indebtedness without Lender's consent or by order of the Court, or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Pre-Petition Indebtedness or the Post-Petition Indebtedness or any liens or security interests with respect thereto or any other rights or interests of Lender from and after July 31, 2017, or in asserting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Code, against Lender.  Nothing herein shall be construed as consent to the allowance of any fees, costs or expenses of the professionals retained by Debtor or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses.

4. "Permitted Liens" shall mean liens held by third parties to the extent such liens were valid, perfected and non-avoidable liens having had priority over the Pre-Petition Liens as of the Petition Date. In addition, certain third parties may have liens which are junior to the interests of Lender (the "Junior Liens").  As set forth in paragraph 16 below, to the extent of the Debtor's use of cash collateral, all Junior Lien holders with valid liens existing as of the Petition Date, [2] shall be granted a replacement lien on the Post Petition Collateral to the extent of any diminution in the value of its claim as a result of Debtor's use of cash collateral.  All liens granted to Junior Lien holders, shall at all times be subordinate to the liens and claims of Lender granted herein or the under the Pre-Petition Loan Documents.

5. Except for Permitted Liens, the liens and security interests granted to Lender by Borrower hereunder shall constitute first, paramount and valid liens upon and security interests in the following assets of Borrower (the "Post-Petition Collateral"):

> "all assets of the Borrower, including, without limitation, present and future accounts, chattel paper, instruments, payment intangibles, general intangibles, records, inventory, equipment of every kind and description, furniture and fixtures, deposit accounts, money, investment property, letters of credit, notes, tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof"

---

[2] Nothing contained in this Stipulation constitutes an admission or waiver of any fact, claim, or defense related to the Junior Liens or the claims or   security interests any such lenders assert against property of the estate, or the nature, extent, validity, or priority of such lenders' asserted security interests, or any other matter with respect to the lenders mentioned herein, other than Lender. This Stipulation is not intended to interrupt, extend or elevate post-petition any prepetition liens asserted as of the Petition Date. Likewise, failure to list or mention any purported lessor herein, does not constitute an admission that any lease between the Debtor and a third party lessor is a true lease and not a disguised financing arrangement. This Stipulation is not intended to interrupt, extend or elevate post-petition any prepetition liens asserted as of the Petition Date.

6. Proceeds or payments received by Lender with respect to the Pre-Petition Collateral upon which Lender had security interests or liens on the Petition Date shall be applied by Lender as follows:

    A.    first, to Pre-Petition Indebtedness consisting of accrued and accruing, fees, costs and expenses;

    B.    next, to Pre-Petition Indebtedness related to the Advances and consisting of principal; and

    C.    last, to Post-Petition Indebtedness, including all accrued and accruing fees, costs and expenses, then principal reduction of the Post-Petition Indebtedness.

7. Proceeds or payments received by Lender with respect to the Post-Petition Collateral arising after the Petition Date shall be applied by Lender to the Post-Petition Indebtedness as follows:

    A.    first, to all accrued and accruing interest, attorney fees, costs and expenses;

    B.    last, to reduce the outstanding principal balance of the Post-Petition Indebtedness.

8. Upon entry of a Final Order approving the terms of this Agreement, in consideration for Lender's performance hereunder, the surcharge provisions of Section 506(c) of the Code and the enhancement of collateral provisions of Section 552 of the Code shall not be imposed upon Lender or its collateral, unless prior to incurring the cost or expense Lender provides written waiver for the cost or expense, or prior to incurring the expense the Debtor obtains a separate order permitting the cost or expense to be used as a surcharge against Lender or its collateral. If no objection is made to the validity, extent or priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral by July 31, 2017, however, then without the need for either the actual adjudication of the Court or for the entry of any separate order, Lender's security interests in, and liens upon, the Pre-Petition Collateral shall be automatically deemed to be first in priority, valid and enforceable. Notwithstanding the foregoing, Lender shall not object to the DIP funding $_____ each month, up to an aggregate amount of $_____ for professional fees for DIP's counsel, any statutory committee appointed in this case and for fees to pay the quarterly payments due to the United States Trustee (the "Professional Fee Carve Out"). Upon DIP actually funding the Professional Fee Carve Out, Lender shall waive any claim or interest in the Professional Fee Carve Out whether arising by way of Lender's liens, administrative expense claims or otherwise, provided however, until Lender has been paid in full, no portion of the Professional Fee Carve Out may be used in connection with claims or actions adverse to the Lender or the Lender's interests in the Pre-Petition Collateral or Post-Petition collateral, or any of the rights granted to the Lender pursuant to this Agreement, including, without limitation; (i) any action at any time, whether before or after the termination of this Agreement, to challenge the extent, validity, priority, enforceability or perfection of the pre-

petition liens, Pre-Petition Indebtedness,  or the amount of the Lender's other claims against the Debtor or DIP; or (ii) any attempt to take any action which would be an Event of Default hereunder.

9.  Notwithstanding the terms of this Agreement and Stipulation, any party-in-interest shall have until July 31, 2017, to object to the validity, extent and priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral.  If no objection is made to the validity, extent or priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral by such date, however, then without the need for either the actual adjudication of the Court or for the entry of any separate order, Lender's security interests in, and liens upon, the Pre-Petition Collateral shall be automatically deemed to be first in priority, valid and enforceable.

10.  Upon entry of an Order authorizing Debtor to enter into the agreement set forth in this Stipulation, the security interests and liens granted to Lender by virtue of this agreement shall be deemed to continue to be first, valid and perfected as against all third parties, without regard to applicable federal, state or local filing and recording statutes, <u>nunc pro tunc</u> as of the Petition Date and without further action of any party, including Lender; provided, that Lender may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing Debtor as "debtor" and Lender as "secured party," and all liens and security interests in favor of Lender, shall be deemed to have been filed and the security interests and liens evidenced thereby shall be deemed perfected <u>nunc pro tunc</u> as of the time and date of the filing of the Petition.

11.  To further evidence the Post-Petition Indebtedness, the creation of Lender's security interests in and liens upon the Post-Petition Collateral and the other terms and conditions of the financing arrangement contemplated hereby, Debtor hereby agrees to (but at Lender's option need not) execute and deliver to Lender the following (collectively, the "<u>Post-Petition Documents</u>"), in form and substance satisfactory to Lender:

    A.  Agreements, instruments and documents in substantially the form of the Pre-Petition Loan Documents;

    B.  All such financing statements, notices, schedules, security agreements, assignments, consents, agreements, instruments and documents necessary or required to evidence loans, to consummate the terms and provisions of this Stipulation and the Post-Petition Documents and to perfect the liens and security interests to be given to Lender pursuant thereto;

    C.  A copy of the resolutions of the Shareholders and Board of Directors of Debtor authorizing the execution, delivery and performance of this Stipulation, the Post-Petition Documents, and the other matters contemplated hereby certified by the Secretary of Debtor, together with such corporate action as Lender may request; and,

    D.  Such other agreements, instruments and documents from Debtor or third parties as

Lender or its counsel shall require and such other orders of the Bankruptcy Court and other courts, with respect to Debtor or third parties, as Lender or its counsel shall require. Until and unless the Post-Petition Documents are executed, the terms and conditions of the Pre-Petition Loan Documents shall govern the Post-Petition Indebtedness, except to the extent otherwise provided herein or modified hereby.

12. All Post-Petition Indebtedness owing by Debtor to Lender, and the liens and security interests of Lender in the Post-Petition Collateral, shall at all times be senior to the rights of Debtor in this proceeding under the Code, except for the amounts funded for the Professional Fee Carve Out, and shall have priority in all respects under the provisions of Sections 364(c)(1) and 364(c)(2) of the Code over all administrative expenses incurred in this Chapter 11 reorganization proceeding of the kind specified in Section 503(b) or 507(b) of the Code whether incurred or arising prior or subsequent to the date of the Petition, the entry of an Order authorizing Debtor to enter into this Stipulation or a conversion of this case pursuant to Section 1112 of the Code or in any other proceeding related hereto, and whether incurred pursuant to Section 726(b) of the Code or otherwise. No claims, whether incurred during this Chapter 11 case or in any converted case under Chapter 7, shall be prior to or on a parity with the claim of Lender against Debtor arising out of the Post-Petition Indebtedness, or with Lender's security interests in, and liens upon, the Post-Petition Collateral, and no costs or expenses of administration shall be imposed against Lender, its claims or the Post-Petition Collateral.

13. If, in the course of this reorganization proceeding, and contrary to the above provisions, this Court grants liens or security interests to others pursuant to Section 364(d) or any other provision of the Code, which liens or security interests are senior or equal to the liens or security interests of Lender described above, then any proceeds of extensions of credit secured by such senior or equal liens or security interests shall be applied to the Post-Petition Indebtedness of Borrower and Debtor to Lender, including all attorneys' fees, costs and expenses, and Lender shall retain all liens and security interests held by it until all of the Post-Petition Indebtedness is paid in full, unless the consent of Lender is obtained.

14. Debtor shall submit monthly Budgets to Lender for approval on the twentieth day of every month during the term of this Stipulation. Lender shall have until the thirtieth (30th) day of each month to provide Debtor with written objection to any line item contained in the Budget. If no objection is lodged, Lender shall be deemed to have consented to the payment of items set forth in the Budget for each month. If an objection is lodged by Lender, Debtor shall not be permitted to pay the line item objected to until the Lender and the Debtor resolve the issue or upon further order of the Court.

15. Debtor shall use the proceeds of the Post-Petition Indebtedness only for payment of such items set forth in the Budgets to be provided per paragraph 1(a) above within a 10% aggregate variance of the Budget. Payment by Debtor of amounts or expenses other than those specifically set forth in the Budgets (within a 10% variance of each Budget), other than U.S. Trustee fees or expenses and any other expenses approved by the Court that are outside

of the Budget, including the fees or expenses of the Debtor's retained professionals, shall constitute a Default unless Lender consents to those changes in writing. Any Budget submitted by the Debtor shall not be an admission of liability or constitute the waiver of any fact, claim, or defense of the Debtor nor shall it limit the particular recipients of any expenditure. In accepting the Budgets and by taking any other actions pursuant to this Stipulation, Lender shall not have any liability to any third party and shall not be deemed to be in control of the operations of Debtor or to be acting as a "responsible person" with respect to the operation or management of Debtor.

16. Debtor is authorized to use cash collateral in accordance with this agreement. To the extent of the Debtor's use of the Pre-Petition Collateral, any creditor holding a valid, enforceable, non-avoidable Junior Lien is hereby granted a replacement lien in the Post-Petition Collateral subordinate to the interest of Lender, and thereafter in and to the same extent, validity and priority as existed prior to the Petition Date; provided, however, that such replacement liens shall be granted only to the extent necessary to replenish the diminution in value as of the Petition Date of Junior Liens and shall not exceed the amount, priority, validity, perfection or enforceability of such lien positions and rights as of the Petition Date; provided further, that such replacement liens shall not attach to avoidance actions or other actions under Chapter 5 of the Code or any proceeds or recoveries therefrom; provided further that the replacement liens shall not be (i) extend or attach to any lien that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Code or (ii) except for senior priming liens that may be granted by the Court for debtor-in-possession financing pursuant to Section 364 of the Code, subordinated to or made *pari passu* with any other lien under Sections 363 and 364 of the Code.

17. Debtor may, without further order of the Court, be directed by Lender to, or Lender may directly, instruct all account Debtor of existing and future accounts (whether included in the Pre-Petition or Post-Petition Collateral) to make payments directly to Lender or such lock box or depository account as Lender may designate, and, as hereinabove provided, such proceeds shall be available for application by Lender against the Pre-Petition and Post-Petition Indebtedness of Borrower and Debtor to Lender. In the event Debtor at any time receives any payments from the sale or disposition of proceeds of accounts or other Pre-Petition Collateral or Post-Petition Collateral, such payments and/or proceeds shall be immediately remitted to Lender.

18. Agreements by Lender to extend credit to Debtor, and by Debtor to seek financial accommodations from Lender contained herein or in any Post-Petition Document or arising pursuant hereto or otherwise may be terminated by Lender, for cause, at any time upon five (5) business days notice to Debtor c/o its counsel, and by Debtor, without cause, at any time upon sixty (60) business days notice to Lender c/o its counsel. Agreements by Lender to extend credit to Debtor, and by Debtor to seek financial accommodations from Lender contained herein or in any Post-Petition Document or arising pursuant hereto or otherwise may be terminated by Lender, without cause, at any time after June __, 2017, upon sixty (60) days notice to Debtor c/o its counsel as set forth above. Upon termination by either party, the Pre-Petition Indebtedness and Post-Petition Indebtedness, including all accrued and accruing

costs and expenses, shall then be immediately due and payable; provided, however, that the obligations and rights of Lender and Debtor with respect to all transactions which have occurred prior to such termination, including without limitation Debtor's obligation to remit, and Lender's right to receive and apply, Cash Proceeds, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination Lender shall be deemed to have retained all of its respective rights and remedies under the Code. The Post-Petition Documents shall automatically be deemed terminated and the Post-Petition Indebtedness shall become immediately due and payable upon termination of this Stipulation or a conversion of this cause under Section 1112 of the Code. If a plan of reorganization is confirmed pursuant to Title 11, then that confirmed plan shall govern the treatment of the liens, payments and other issues embodied in this Stipulation. Exercising any default remedies hereunder shall require an order lifting the automatic stay.

19. Any one or more of the following shall constitute an event of default entitling Lender to terminate this Stipulation for cause: (a) Debtor commits any Event of Default under the Pre-Petition Loan Documents (other than the provisions relating to insolvency or bankruptcy); (b) any Debtor fails to perform any of its obligations in strict accordance with the terms of this Stipulation; (c) any representation or warranty made by any Debtor in any certificate, report or financial statement delivered to the Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (d) the chapter 11 Bankruptcy Case is converted to a case under chapter 7 of the Code; (e) a Trustee is appointed or elected in the Bankruptcy Case, or an examiner with the power to operate the Debtor's business is appointed in the Bankruptcy Case; (f) Debtor's right to use cash collateral is terminated; (g) the Court grants a lien or administrative expense claim with priority senior to the rights of Lender in this proceeding under the Code, except for the Professional Fee Carve Out; (h) payment, without the consent of Lender, of any pre-petition payments other than those permitted by court order in connection with Debtor's First Day Motions or allowed pursuant to 11 U.S.C. 503(b)(9); or (i) the entry of any judgment against the Debtor on a post-petition obligation in an amount in excess of One Million Dollars and No Cents ($1,000,000.00). Lender shall have the exclusive right to waive any Event of Default.

20. The Debtor shall without further order of this Court, reimburse Lender for all filing and recording fees and the reasonable attorneys' fees incurred by Lender in connection with the Post-Petition Indebtedness and the handling of the Bankruptcy Case and all matters related thereto on a provisional basis. Subject to Lender's discretion, the reimbursement contemplated hereby may be made by Lender's deducting such amounts from collections as provided in paragraph 11 above or by Lender's adding such amounts to the Post-Petition Indebtedness. Lender, however, shall provide Debtor's counsel with copies of the invoices sent by Lender's counsel to Lender (edited to delete any attorney-client or other confidential information) with respect to the attorneys' fees and related costs and expenses described in this Paragraph. The provisions of this Paragraph shall be without prejudice to the rights of any party with the requisite standing, including but not limited to Debtor, any official

committee, and the U.S. Trustee, to object to the reasonableness of any such fees, costs and expenses; provided, however, that any party so objecting shall file and serve upon Lender an objection describing with particularity the items or categories of fees, costs and expenses that are the subject of the objection and providing the specific basis of the objection to each such item or category of fees, costs and expenses; and provided, further, that unless a party with the requisite standing files and serve its respective objection within thirty (30) days of receiving its copy of such invoice, then the objection of such party failing to so file and serve its objection to the fees and expenses set forth on each such invoice shall be forever waived and barred. Any hearing on objections to the fees and expenses of Lender set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objections. Notwithstanding anything to the contrary contained in this paragraph, all fees and costs incurred by lender shall be subject to entry of an order by the court approving the fees and costs.

21. The signature of those individuals identified above or any other persons authorized by the corporate resolutions referred to above, whether by letter to Lender or appearing on any one or more of the Post-Petition Documents, shall bind Debtor nunc pro tunc as of the date of the filing of the Petition.

22. Debtor hereby is required to deliver to Lender such financial and other information concerning the business, collateral and affairs of Debtor as required pursuant to the Pre-Petition Loan Documents and as Lender shall reasonably request from time to time hereafter.

23. This Stipulation is further subject to the delivery to Lender of evidence, satisfactory to Lender's counsel, that the Pre-Petition Collateral and the Post-Petition Collateral are insured for the full replacement value thereof.

24. The provisions of this Stipulation shall be binding upon and inure to the benefit of Lender, Debtor and their respective successors and assigns, including, but not limited to, any Chapter 7 or Chapter 11 Trustee hereinafter appointed as a representative of the estates herein.

25. This Stipulation shall continue until the earlier of:

(i) the closing of a sale of substantially all of the assets of the Borrower's business;

(ii) the effective date of a confirmed Chapter 11 plan of reorganization in a subsequent Chapter 11 bankruptcy case commenced by, or on behalf of, the Borrower;

(iii) the conversion of any subsequent Chapter 11 bankruptcy case commenced by, or on behalf of, the Borrower from Chapter 11 to a case under Chapter 7 of the Bankruptcy Code;

(iv) June __, 2018; or

(v) termination by Lender or Debtor as provided above.

26. To the extent there exists any conflict between the Post-Petition Documents, the Motion or any other agreements and the terms of this agreement, this Stipulation shall govern.

27. Nothing herein contained shall: (a) affect or impair Lender's right to seek adequate protection of its interests in the Pre-Petition Collateral; (b) be deemed to constitute or constitute a commitment by Lender to continue to make advances to Debtor or to finance Debtor's Chapter 11 proceeding other than as expressly set forth herein; or (c) be deemed to constitute a waiver of any default by Borrowers under the Pre-Petition Loan Documents other than defaults consisting of the filing of the Petition.

Notice shall be served within twenty-four hours of entry of an order authorizing Debtor to enter into this Stipulation, by mailing copies of this Stipulation, (excluding Exhibits attached hereto), and the Order authorizing Debtor to enter into this Stipulation, to Lender, all secured creditors, the twenty largest unsecured creditors for each Debtor, the U.S. Trustee, the Internal Revenue Service, and all other creditors who have filed requests to receive notice. If, after the entry of an interim order authorizing Debtor to enter into this agreement, any or all of the provisions of this agreement are modified, vacated or stayed by subsequent order of this or any other Court, such modification, vacation or stay shall not affect the validity of (a) any indebtedness to Lender incurred pursuant to this Stipulation prior to the effective date of such modification, vacation or stay, or (b) the validity and enforceability of any security interest or lien or priority granted hereby with respect to the Pre-Petition and Post-Petition Indebtedness.  Moreover, notwithstanding such modification, vacation or stay, any advances of funds, guarantees of letters of credit, use of cash collateral or financial accommodations made pursuant to this Stipulation by Lender prior to the effective date of such modification, vacation or stay, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this agreement and Lender shall be entitled to all the rights, privileges and benefits, including without limitation the security interests, liens and priorities granted herein, with respect to all such advances.

**[Remainder of Page Left Intentionally Blank]**

28. As further new post-petition consideration to the Debtor and its estate, the following persons, each a "Guarantor" agrees to and does hereby guaranty both the Pre-Petition Indebtedness and the Post-Petition Indebtedness of Borrower without any claim for offset, reduction or counterclaim:

Dated this June __, 2017.

By:  **Premier Marine, Inc.**

_____
Lori Melbostad, President
Date: _____

And

By:  **Trusek, LLC**

_____
Terry Astleford
Date: _____

Consented and agreed:

By: Rober J. Menne, Jr.

_____
As a Guarantor
Date: _____

By: Betty J. Menne

_____
As a Guarantor
Date: _____


Dated this __ day of June, 2017.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                              Case No. 17-32006
PREMIER MARINE, INC.,                               Chapter 11

       Debtor.

---

## MEMORANDUM OF LAW

---

This memorandum of law is submitted in support of the Debtor's Notice of Expedited Hearing and Motion for Order Authorizing Secured Borrowing and Granting Junior Liens Pursuant to 11 U.S.C. § 364(c)(3) ("Motion").[1]  A preliminary hearing has been scheduled for **2:30 p.m. on June 22, 2017**.  A final hearing is scheduled on **July 11, 2017 at 10:00 a.m.**

### FACTS

The factual basis for this memorandum are set forth in the verified Motion and incorporated herein.  All capitalized terms not defined herein have the meaning ascribed in the Motion.

### LEGAL ARGUMENT

1.     <u>The Proposed Financing Is Necessary To A Successful Reorganization</u>.

11 U.S.C. §364(c) provides:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--

     (1)     with priority over any or all administrative expenses of the kind specified in 503(b) or 507(b) of this title;

---

[1] All capitalized terms not defined in this Memorandum have the meanings prescribed to them in the Motion.

{00354619 }

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

Having determined that postpetition financing was available only under Bankruptcy Code sections 364(c), the Debtor negotiated the DIP Loan at arm's length and in accordance with its sound business judgment.  In negotiating debtor-in-possession financing arrangements, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties."  In re Ames Department Store, Inc., 115 B.R. 34, 38 (S.D.N.Y. 1990).  Courts will evaluate the facts and circumstances of a debtor's case, and will accord significant weight to the necessity for obtaining financing so long as it does not run afoul of the provisions of and policies underlying the Bankruptcy Code.  See, e.g., In re Snow Shoe, 789 F.2d 1085 (4th Cir. 1986) (approving postpetition financing necessary to sustain seasonable business); Ames, 115 B.R. at 40 ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.")  Courts generally will not override the debtor's prudent and responsible exercise of its business judgment consistent with its fiduciary duties to the bankruptcy estate and its creditors in negotiating an appropriate financing package.  See In re Simasko Prod Co., 47 B.R. 444 (Bankr.  D. Colo. 1985) (noting that business judgment should be left to the boardroom and not to the bankruptcy courts).

The financing contemplated by the DIP Loan benefits the Debtor's bankruptcy estate and its creditors.  It is critical to the preservation and enhancement of the Debtor's business and going

2

concern value.  With the DIP Loan, the Debtor will be able to obtain services in connection with its

operations, including paying its employees, maintaining adequate cash balances, and operating its

business in order to preserve the ongoing value of its assets and enterprise for the benefit of all

creditors.  Without the financing furnished by the DIP Loan, the Debtor will suffer irreparable harm,

and its entire reorganization effort will be jeopardized.

<b>CONCLUSION</b>

For reasons set forth in the Motion and this Memorandum, the Debtor respectfully requests

that the Motion be granted.

Dated:  June 20, 2017                              RAVICH MEYER KIRKMAN McGRATH
                                                   NAUMAN & TANSEY,
                                                   A PROFESSIONAL ASSOCIATION

                                                   By /e/  Michael F. McGrath #168610
                                                           Will R. Tansey #323056

                                                   150 S. Fifth Street, Suite 3450
                                                   Minneapolis, MN 55402
                                                   Telephone:     (612) 332-8511
                                                   Facsimile:     (612) 332-8302

                                                   ATTORNEYS FOR DEBTOR

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  17-32006 |
| Premier Marine, Inc., | Chapter 11 |
| Debtor. | Hearing Set For: June 22, 2017 at 2:30 p.m. |

## INTERIM ORDER: (I) APPROVING STIPULATION AND AGREEMENT REGARDING DEBTOR'S EMERGENCY MOTION FOR POST-PETITION FINANCING AND USE OF CASH COLLATERAL; (II) GRANTING LIENS AND SECURITY INTERESTS PURSUANT TO 11 U.S.C. §364(c); AND (III) AUTHORIZING USE OF CASH COLLATERAL

On this date came on for consideration the Stipulation and Agreement (the "Stipulation") Regarding Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 363 and/or 364 for Interim and Final Orders Authorizing (I) Debtor-in-Possession Financing, and/or (II) Limited Use of Cash Collateral and Granting Adequate Protection (the "Motion") by and between Premier Marine, Inc. the Debtor and Debtor-in-Possession (the "Debtor" or "DIP" or "Borrower"), in the above-captioned Chapter 11 case (the "Bankruptcy Case"), and Trusek, LLC. ("Trusek" or the "Lender"), seeking inter alia, pursuant to Sections 105, 361, 362(a), 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the entry of an order (the "Order") for the Debtor to incur debt and borrow funds (the "DIP Financing")[1] from Trusek upon the terms set forth in the Stipulation.

### THE COURT, AFTER DUE DELIBERATION THEREON, AND FINDING

### GOOD AND SUFFICIENT CAUSE APPEARING THEREFORE, AND BASED UPON

---

[1] All capitalized terms in this Order not otherwise defined shall have the meanings given to those terms in the DIP Financing agreement referenced herein or the Stipulation.

THE STIPULATION BETWEEN THE DEBTOR AND LENDER, THE EVIDENCE

PROFFERED AND PRESENTED AT THE HEARING, THE GROUNDS SET FORTH IN

THE MOTION, AS SUPPLEMENTED, AND THE ARGUMENTS OF COUNSEL,

HEREBY FINDS AND CONCLUDES AS FOLLOWS:

## I.

### JURISDICTION

1.    On June __, 2017 (the "Petition Date"), Debtor filed a voluntary petition (the

"Petition") for reorganization under the Bankruptcy Code.

2.    The Debtor continues to operate its businesses as debtor-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committees

have been appointed in the Bankruptcy Case.

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

Consideration of this action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

### PREPETITION LOAN ARRANGEMENT

4.    As of the Petition Date, Borrower was indebted to Lender by reason of the

Advances in the principal amount of approximately $500,000.00, plus those costs and expenses

which Lender incurred prior to the Petition Date, and for which Lender is entitled to recover

pursuant to the Pre-Petition Documents.   All amounts referred to in this paragraph are

collectively referred to herein as the "Pre-Petition Indebtedness."  The Pre-Petition Indebtedness

owing to Lender is fully due and payable according to the Pre-Petition documents.

### III.

### DIP FINANCING

5.      The Debtor is seeking to incur debt by borrowing from Trusek post-petition, under substantially the same terms and conditions as it borrowed under prepetition (the "DIP Financing"), and as set forth in the Stipulation.  To the extent any conflict may exist between the Prepetition Loan Documents and the Stipulation, the Stipulation controls.   Without DIP Financing, the Debtor will not have the funds necessary to operate their businesses, maintain assets, or pay employees, payroll taxes, insurance, utilities, fuel suppliers and other vendors, overhead, lease expenses and other expenses required for the reorganization of the Debtor's business and to maximize the value of the Debtor's estate.

6.      In order to avoid immediate and irreparable harm to the Debtor's estate that will occur if DIP Financing is not immediately approved, on an interim basis, the Debtor and Lender have entered into the Stipulation for the authorization for immediate DIP Financing for normal operating purposes, in exchange for the adequate protection set forth therein.

6.      Notice of the Stipulation was adequately served by giving notice thereof to the Office of the United States Trustee, each of the lenders listed therein and their counsel where known, and the Debtor's known secured creditors, and the Debtor's twenty (20) largest unsecured creditors (without exhibits) by facsimile and emails where known and first-class mail, postage prepaid.  Accordingly, notice was adequate and sufficient under the circumstances, and pursuant to Bankruptcy Rules 4001(c) and 4001(d)(4), no further or other notice is necessary.

7.      Lender has indicated a willingness to extend credit to Debtor, but only under the terms and conditions set forth in this Stipulation.  Debtor believes that, under the circumstances,

the following terms and conditions are a fair and reasonable response to Debtor's request for financial assistance.

8.       Entry of an Order approving the agreements contained in the Stipulation will minimize disruption of Debtor as "going concerns," will increase the possibilities for a successful reorganization, and, therefore, is in the best interests of the estate and its creditors. Debtor represents that no financing is available on terms and conditions more favorable than offered by Lender.

9.       Prior to the Petition Date, the Debtor investigated the possibility of obtaining alternative sources of cash or credit on an unsecured basis or secured basis on more favorable terms than the terms provided by the Lender.  The Debtor has been unable to find any entity willing to provide financing on terms more favorable than the terms provided by the Lender, and believes, based on that investigation, its historical experience with potential lenders, and its knowledge of the lending terms provided to companies that, under the circumstances, no financing on terms more favorable than those proposed by the Lender is available.  Thus, pursuant to sections 364(a) and 364(b) of the Code, Debtor has attempted, and is unable to obtain either unsecured credit or unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense in the amounts and on as favorable terms as are being agreed to by Trusek.

10.       The Lender has acted in good faith in agreeing to extend credit to the Debtor in accordance with the Stipulation and this Order.  The terms of the DIP Financing authorized by this Order and set forth below are for reasonably equivalent value and fair consideration.  The agreements and arrangements authorized in this Order have been negotiated at arms' length with all parties represented by experienced counsel, are fair and reasonable under the circumstances,

are enforceable in accordance with their terms and have been entered into in good faith.  Any

credit extended and loans made to the Debtor by the Lender pursuant to the Stipulation shall be

deemed to have been extended in good faith, as that term is used in section 364(e) of the

Bankruptcy Code.

11.     Upon the occurrence of any Event of Default, the Lender shall be entitled to the

rights and remedies provided in the Stipulation or the Pre-Petition Loan Documents; provided,

however, that the Lender shall provide the Debtor, their counsel, any statutory committee

appointed in this Bankruptcy Case at least five (5) business days notice of default prior to taking

any actions to enforce its rights under the Stipulation.

Therefore, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT:**

12.     The Stipulation is hereby approved on an interim basis as set forth herein.

15.     Pursuant to Bankruptcy Rule 4001(d)(2), any objection to this Interim Order or to

the Stipulation must be filed on or before _____, 2017 (the "Objection Date").  The mailing

of a copy of this Interim Order by first class mail, postage prepaid, to those entities required

under Bankruptcy Rule 4001(d)(1) shall be deemed to constitute compliance with the applicable

notice provisions of Bankruptcy Rule 4001 regarding agreements for use of DIP Financing

and/or cash collateral and granting of adequate protection.

16.     A final hearing on the Motion shall take place on _____, 2017, before the

Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court,

_____, (the "Final Hearing").  Objections shall be in writing and shall

be filed with the Clerk of the Bankruptcy Court and served upon, at a minimum, counsel for the

5

Debtor, counsel for Trusek, and the United States Trustee so that any such objections are received on or before the Objection Date.

17.    This Interim Order expires on the date of the Final Hearing, unless this Interim Order is expressly extended by order of the Court.

18.    <u>Authorization to Borrow; DIP Financing</u>.  The Debtor is authorized to enter into, perform and be bound by the Stipulation.  The Debtor is authorized to borrow money in accordance with the Stipulation, and the Debtor is authorized to perform its obligations in accordance with the terms of the Stipulation.  The Stipulation shall be and become obligations of the Debtor and its estate upon entry of this Interim Order, with such approval to be effective up to and through the date of the Final Hearing.    All indebtedness and obligations incurred after the Petition Date by the Debtor to the Lender pursuant to the Stipulation (including principal, fees, costs and expenses, including reasonable fees and expenses of professionals engaged by the Lender) are referred to herein as the "<u>Post-Petition Indebtedness</u>."

19.    <u>Maximum Amount of Borrowing</u>.  The maximum aggregate outstanding principal amount of Pre-Petition Indebtedness and the Post-Petition Indebtedness authorized to be borrowed by the Debtor at any point in time from the Lender pursuant to this Order and the Stipulation shall be Two Million Five Hundred Thousand Dollars and No Cents ($2,500,000.00).

20.    <u>Termination of Loans; Term of DIP Financing</u>.  The Stipulation and the Lender's willingness to make advances there under, shall immediately and automatically terminate (except as the Lender may otherwise agree in writing), and all Pre-Petition Indebtedness and all Post-Petition Indebtedness shall become due and payable in full in accordance with the termination provisions set forth in the Pre-Petition Loan Documents and the Stipulation.

21.    <u>Permitted Liens</u>.  "Permitted Liens" shall mean liens held by third parties to the extent such liens were valid, perfected and non-avoidable liens having had priority over the interests of Lender in the Prepetition Collateral as of the Petition Date, and as determined in accordance with the limitations of paragraph 25 hereof on Permitted Liens.

22.    <u>Junior Liens</u> shall mean liens held by third parties which are junior to the interests of Lender, if any, in the Prepetition Collateral (the "<u>Junior Liens</u>")[2].

23.    <u>Security for Post-Petition Indebtedness</u>.  Subject to the Permitted Liens in Prepetition Collateral, the Post-Petition Indebtedness shall, pursuant to sections 364(c) of the Bankruptcy Code, be secured by a first priority security interest in, the following assets (the "<u>Post-Petition Collateral</u>") of Borrower:

> all assets of the Borrower, including, without limitation, present and future accounts, chattel paper, instruments, payment intangibles, general intangibles, records, inventory, equipment of every kind and description, furniture and fixtures, deposit accounts, money, investment property, letters of credit, notes, tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof.

24.    <u>Perfection of Liens on Post-Petition Collateral</u>.  The Lender shall not be required to file financing statements or other documents in any jurisdiction or take any other action in order to validate or perfect the security interests and liens granted to it by this Order or by the Stipulation.  If the Lender shall, in its sole and absolute discretion, choose to file such financing statements or other documents or otherwise confirm perfection of such security interests and liens, the Lender is authorized to effect such filings and recordation, and all such financing statements or similar documents shall be deemed to have been filed or recorded as of the Petition Date.  The liens and security interests granted to Lender by Borrower hereunder shall constitute

---

[2] Reference to Permitted Liens and Junior Liens is not a ruling or indication that any such liens exist and as stated in the Stipulation, the Debtor are still in the process of investigating the validity, priority and enforceability of the claims or liens of any such lienholders.

first, paramount and valid post-petition liens upon and security interests in the accounts, contract

rights, receivables and payment intangibles generated by Borrower.

25.    <u>Use of Cash Collateral</u>.  Debtor is authorized to use cash collateral in accordance

with the Stipulation.  To the extent of the Debtor's use of the Pre-Petition Collateral, any creditor

holding a valid, enforceable, non-avoidable Junior Lien, is hereby granted a replacement lien in

the Post-Petition Collateral subordinate to the interest of Lender, and thereafter in and to the

same extent, validity and priority as existed prior to the Petition Date if any; <u>provided</u>, <u>however</u>,

that such replacement liens shall be granted only to the extent necessary to replenish the post-

petition diminution in value as of the Petition Date of Junior Liens which are not avoidable and

such security interest and shall not exceed the amount, priority, validity, extent, perfection or

enforceability of such lien positions and rights as of the Petition Date; <u>provided further</u>, that such

replacement liens shall not attach to avoidance actions or other actions under Chapter 5 of the

Bankruptcy Code or any proceeds or recoveries there from; <u>provided further</u> that the replacement

liens shall not (i) attach to any lien that is avoided and preserved for the benefit of the Debtor's

estates under section 551 of the Bankruptcy Code, (ii) prevent senior priming liens that may be

granted by the Court for Debtor in possession financing pursuant to section 364 of the

Bankruptcy Code, subordinated to or made *pari passu* with any other lien under Sections 363

and 364 of the Bankruptcy Code, or (iii) prevent proposed plan treatment under section 1129(b).

26.    <u>Limitation on Contesting/Objecting to Lender's Indebtedness or Liens</u>.  After July

31, 2017, no portion of the Post-Petition Indebtedness shall be used to fund fees or expenses

incurred by any entity, including the Debtor and professionals retained by Debtor, in:

(1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Pre-

Petition Collateral or Post-Petition Collateral (as defined below) once a post-petition Event of

8

Default has occurred (2) using or seeking to use cash collateral or selling any other Pre-Petition

Collateral or Post-Petition Collateral without Lender's consent or by order of the Court,

(3) incurring indebtedness without Lender's consent or by order of the Court, or (4) objecting to

or contesting in any manner, or in raising any defenses to, the validity, extent, amount,

perfection, priority or enforceability of the Pre-Petition Indebtedness or the Post-Petition

Indebtedness or any liens or security interests with respect thereto or any other rights or interests

of Lender.

27.    Modification of Automatic Stay.

      a.    The automatic stay pursuant to section 362 of the Bankruptcy Code is

hereby modified with respect to the Debtor and its estate to the extent

necessary (i) to enable the Lender to file any financing statements, deeds

of trust, mortgages or other instruments and documents, if any, evidencing

its security interests in and liens on the Post-Petition Collateral; and (ii) to

allow the Lender to give the Debtor any notice provided for in the

Stipulation or this Order.

28.    Limitation on Section 506(c) Charges.    In addition to the liens granted to the

Lender hereunder, the Post-Petition Indebtedness shall constitute an administrative priority

equivalent in priority to a claim under sections 364(c)(1), 503(b) and 507(a)(1) of the

Bankruptcy Code.    In consideration for Lender's performance hereunder, and except for the

Professional Fee Carve Out, as defined in the Stipulation, the surcharge provisions of section

506(c) of the Code and the enhancement of collateral provisions of Section 552 of the Code shall

not be imposed upon Lender or its collateral, unless prior to incurring the cost or expense Lender

provides written waiver for the cost or expense, or the Debtor or any trustee appointed in this

9

case obtains a separate order permitting the cost or expense to be used as a surcharge against the Post-Petition Collateral.

29.     <u>Bar Date for Objections to Lender's Liens and Claims</u>.   All parties-in-interest, other than the Debtor, shall have until July 31, 2017, to object to the validity, extent and priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral.  If no objection is made to the validity, extent or priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral by such date, however, then without the need for either the actual adjudication of the Court or for the entry of any separate order, Lender's security interests in, and liens upon, the Pre-Petition Collateral shall be automatically deemed to be first in priority, valid and enforceable.

30.     <u>Use of Proceeds of Post-Petition Indebtedness</u>.  Debtor shall use funds borrowed under the Stipulation only to pay ordinary course of business expenses that are consistent with the historical practices of the Debtor and to replenish working capital expended in accordance with the budgets to be delivered to the Lender by the Debtor under the terms of the Stipulation (the "Budgets"), other than U.S. Trustee fees or expenses and any other expenses approved by the Court that are outside of the Budget, including the fees or expenses of the Debtor's retained professionals; provided, however, that the foregoing shall not be construed to prohibit the Debtor from using funds advanced by the Lender under the Stipulation  to pay expenses as otherwise authorized in this Order or other orders of the Court.  It is understood that the Lender may assume that the Debtor will comply with this requirement, and the Lender shall have no duty to monitor such compliance.

31.     <u>Sale of Assets</u>.  All sales, leases or dispositions of Pre-Petition Collateral or the Post-Petition Collateral outside of the ordinary course of business may be done only with prior

Court approval and with notice to the Lender.  The Lender expressly reserves its right to contest any proposed sale or disposition of any Post-Petition Collateral except as provided herein.

32.     <u>No Liability to Third Parties</u>.  In making decisions to advance loans or other extensions of credit to the Debtor, in administering any loans or other extensions of credit,  the Lender shall not be deemed to be in control of the operations of the Debtor or its estate, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or the Estate.

33.     <u>Additional Rights of the Lender</u>.  The Lender may petition this Court for any such additional protection as it may reasonably require with respect to the Pre-Petition Collateral, Post-Petition Indebtedness or otherwise.  The Lender shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law.

34.     <u>Dismissal</u>.   If the Case is dismissed, converted, otherwise superseded or substantively consolidated, the Lender's rights and remedies under this Order and the Stipulation shall be and remain in full force and effect as if the Case had not been dismissed, converted, superseded or substantively consolidated.   Furthermore, notwithstanding any such dismissal, conversion, supercission or consolidation, all of the terms and conditions of this Order, including, without limitation, the liens granted hereunder (and their respective priorities), shall remain in full force and effect.

35.     <u>Effect of Modification of Order</u>.

a.     If, for any reason, any of the provisions of this Order are hereafter stayed, modified, terminated, or vacated, on any material matter without the Lender's written consent, including, without limitation, by subsequent order of this or any other Court, then in such event: (i) the Lender shall be

11

entitled, but not obligated, to discontinue any further loans, extensions of credit or financial accommodations hereunder or under the Stipulation; and (ii) the Post-Petition Indebtedness, together with all interest, fees, costs, expenses and charges of any nature that may have accrued in connection therewith, shall upon notice to the Debtor from the Lender, become due and payable upon delivery of such notice, without further notice or order of the Court.

b.     The Debtor and its estate shall not, without the Lender's prior written consent, seek to modify, vacate or amend this Order or the Stipulation. Notwithstanding anything to the contrary in this Order, if any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect the validity of any Post-Petition Indebtedness incurred prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any lien or priority authorized hereby with respect to any such Post-Petition Indebtedness.  Notwithstanding any such stay, modification or vacation, any Post-Petition Indebtedness incurred by the Debtor and its estate prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Post-Petition Indebtedness and the Debtor shall continue to enjoy and be

12

entitled to all rights and protections provided for in the Order, that are not otherwise modified, stayed or vacated.

36.    <u>Rights and Priorities of Lender</u>.   The terms of this Order shall be valid and binding upon the Debtor and its estate, its creditors and all other parties-in-interest from and after the entry of this Order by this Court.  If this Court modifies any of the provisions of this Order following the Hearing, such modifications shall not affect the rights and priorities of the Lender granted pursuant to this Order with respect to that portion of the Post-Petition Indebtedness that is advanced prior to such modifications, and the Debtor shall continue to enjoy and be entitled to all rights and protections provided for in the Order for that portion of the Post-Petition Indebtedness that is advanced prior to such modifications and this Order shall remain in full force and effect.

37.    <u>Objections Overruled</u>.   Except to the extent specifically set forth herein, all objections to the entry of this Order are hereby overruled.


Dated: June __, 2017.


_____
UNITED STATES BANKRUPTCY JUDGE