**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Case No. 17-32006 |
| PREMIER MARINE, INC., | Chapter 11 |
| Debtor. | |

**DEBTOR'S PLAN OF REORGANIZATION**

**DECEMBER 8, 2017**

Premier Marine, Inc., debtor and debtor in possession in the above-referenced chapter 11 case ("Debtor") proposes the following plan of reorganization pursuant to chapter 11 of the United States Bankruptcy Code.

## ARTICLE 1.

## DEFINITIONS AND INTERPRETATION

**1.1** <u>**Definitions**</u>. The capitalized terms used herein shall have the respective meanings set forth below and in the United States Bankruptcy Code.

**(a)** "Administrative Claim" means a claim for a cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code.

**(b)** "Allowed" when used to describe a claim, means: (a) listed in the Schedules in an amount greater than zero and (i) not listed as disputed, contingent or unliquidated, and (ii) as to which no proof of the claim has been filed; (b) as to which a timely proof of the claim has been filed in a sum certain, as to which any objection or motion to estimate, equitably subordinate, reclassify, or otherwise limit the recovery thereon has been resolved; (c) allowed in accordance with Section 502(h) of the Bankruptcy Code; or (d) allowed under this Plan or by Final Order of the Bankruptcy Court.

**(c)** "ABN" means American Bank of the North.

**(d)** "Amended and Restated Articles and Bylaws" means the Articles of Incorporation and Bylaws adopted by the Reorganized Debtor dated as of the Effective Date.

**(e)** "Annual Earnings Distributions" means the Earnings Distribution, subject to Minimum Earnings Distribution and the Earnings Distribution Cap, made by the Reorganized Debtor Pro Rata to the holders of Allowed Class 17 general unsecured claims on the Plan Distribution Dates.

**(f)** "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

**(g)** "Bar Date" means the date fixed by order of the Bankruptcy Court by which a proof of claim must be filed against Debtor; to wit, October 18, 2017 for governmental units and October 18, 2017 for all others.

**(h)** "Columbus Auto" means Columbus Auto Truck & Trailer.

**(i)** "Columbus Auto Claim" means the Allowed Claim of Columbus Auto in the amount of $28,371.36.

**(j)** "Columbus Auto Lien" means the Columbus Auto statutory detainer lien in the Tractor and Trailer which lien secures the Columbus Auto Claim.

**(k)** "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

**(l)** "Dealer Agreements" means any agreement, however and whenever arising, written, oral or by course of dealing between the Debtor and any party authorized to sell Debtor products through the Confirmation Date.

**(m)** "DIP Loan" means the $2,000,000 post-petition loan plus accrued interest made by Trusek, secured by a lien junior to ABN in all assets of the Debtor and a lien in the Midwest Deposit and approved by Bankruptcy Court Order dated July 11, 2017.

**(n)** "Disclosure Statement" means the Debtor's Disclosure Statement dated December 8, 2017, which accompanies this Plan.

**(o)** "Distribution Date" means the first day of the first calendar month following the Effective Date and when used with respect to each claim, means as soon as practicable after the later of (i) the Effective Date, but not later than ten business days thereafter, or (ii) the first business day of the next calendar month after the date upon which the claim becomes an Allowed Claim.

**(p)** "Dowco" shall mean, collectively, Dowco, Inc., a Wisconsin corporation and its wholly owned subsidiary Dowco, LLC, a Wisconsin limited liability company.

**(q)** "Dowco Avoidance Liability" shall mean the Debtor preferential transfer claims against Dowco in the approximate amount of $267,000 arising under 11 U.S.C. § 547 and representing the net reduction in Dowco Claims against the Debtor during the 90 day period immediately preceding the Petition Date.

**(r)** "Dowco Claims" shall mean, collectively, Claim No. 59 in the amount of $685,045.96 and secured, in part, by the Dowco Lien and Claim No. 60, as amended, filed as an unsecured claim in the amount of $105,059.32.

**(s)** "Dowco Lien" shall mean that certain statutory lien in the Tooling asserted in the amount of $813,112.74 pursuant to Minn. Stat. 514.19(3) and 514.20 and perfected by that certain Notice of Lien and Rights of Detainer dated February 10, 2017 and Allowed in the amount of $200,000.

**(t)** "Dowco Supply Agreement" shall mean that certain Exclusive Supply Agreement dated March 16, 2016 between Dowco and the Debtor pursuant to which Dowco supplies pontoon level 1 and 2 seating, rotomolded parts, thermoformed parts, canvas and replacement furniture.

**(u)** "Earnings" means the annual pre-tax earnings of the Reorganized Debtor calculated in accordance with GAAP and as reported on the federal corporate tax return of the Reorganized Debtor.

**(v)** "Earnings Distribution" means 10% of Earnings, subject to the Minimum Earnings Distribution and the Earnings Distribution Cap.

**(w)** "Earnings Distribution Cap" means $3,500,000.

**(x)** "Effective Date" means, and shall occur on, the later of: (i) the first (1st) business day immediately following the date that is fifteen (15) calendar days after the Confirmation Date.

**(y)** "Equity Contribution" means the sum of $1,000,000 cash to be contributed to the Reorganized Debtor by Trusek plus the Trusek Debt Conversion within 5 days following the Effective Date in consideration for issuance of 100% of the New Equity to Trusek.

**(z)** "Farnam" means Farnam Street Financial, Inc., a Minnesota corporation.

**(aa)** "Fiberglass Molds" means all molds, tooling and patterns in Sunrise possession and used to produce fiberglass parts for the Debtor per Debtor specifications.

**(bb)** "Final Order" means an order of the Court, which has not been timely appealed or, if appealed, no stay of the order's effectiveness has been entered.

**(cc)** "FMC" means Ford Motor Credit.

**(dd)** "Hallberg" means Hallberg, Inc., a Minnesota corporation.

**(ee)** "Hallberg Lease" means collectively the remaining leases each dated March 1, 2016 between the Debtor and Hallberg, Inc. for building 7; building A, I and J; and building L and M.

**(ff)** "Hallberg Marine" means Hallberg Marine, Inc., a Minnesota corporation.

**(gg)** "Insider Employee Agreements" means one year employment agreements commencing the Effective Date between the Reorganized Debtor and Lori Melbostad, Robert Menne, Jr and Betty Menne renewable in the discretion of the board of the Reorganized Debtor, the terms of which are summarized in Section 5.13 of the Disclosure Statement and Section 7.13 of the Plan.

**(hh)** "Insider Employees" means Lori Melbostad, the Chief Executive Officer of the Debtor, Robert Menne, Jr. a founding shareholder, director and employee of the Debtor, and Betty Menne, a director and employee of the Debtor and the individuals listed on **Exhibit 5** to the Disclosure Statement.

**(ii)** "Lippert" means Lippert Components, Inc., a Delaware corporation.

**(jj)** "Maturity Date", when used in reference to treatment of WFEF, Farnam or FMC claims, except as expressly stated in the Plan, means the maturity date of the respective prepetition loan agreements between the Debtor and the Lender pertaining to the claim.

**(kk)** "Midwest Bank" means Midwest Bank, a national banking association.

**(ll)** "Midwest Deposit" means the $1,000,000 of Debtor cash on deposit at Midwest Bank, Account No. 4603021, to secure the Wells Fargo LOC.

**(mm)** "Minimum Earnings Distribution" means the greater of (1) the sum total of Annual Earnings Distributions made on the Plan Distribution Dates or (2) $1,000,000.00 to be distributed to the holders of Allowed Class 17 general unsecured creditors on or before April 1, 2022.

**(nn)** "New Dealer Agreements" means a written dealer agreement in a form prepared by the Reorganized Debtor and executed by the Reorganized Debtor and any party to whom the Reorganized Debtor extends the opportunity to become an authorized Premier dealer.

**(oo)** "New Equity" means 100 shares of common stock representing 100% of the issued and outstanding common stock of the Reorganized Debtor to be issued to Trusek in consideration for the Equity Contribution.

**(pp)** "Northpoint" means Northpoint Commercial Finance, LLC, a Delaware limited liability company.

**(qq)** "Northpoint Claim" means Claim No. 89 filed in the amount of $538,000 and secured, in part, by the Northpoint Deposit.

**(rr)** "Northpoint Deposit" means $41,072.50 held by Northpoint under the Northpoint Repurchase Agreement.

**(ss)** "Northpoint Repurchase Agreement" means that certain Repurchase Agreement between Northpoint and the Debtor dated February 26, 2015 and that certain Cash Collateral Agreement dated February 1, 2017 by which the Debtor committed to

repurchase boats for 2 years from the date of dealer purchase and to allow for retention of certain cash reserves as security for repayment of repurchase obligations, if any.

**(tt)** "Petition Date" shall mean June 19, 2017.

**(uu)** "Plan" means the Debtor's Plan of Reorganization dated December 8, 2017.

**(vv)** "Plan Distribution Dates" means the following dates on which the Reorganized Debtor shall make Annual Earnings Distributions Pro Rata to the holders of Allowed Class 17 general unsecured creditors, subject to the Minimum Earnings Distribution and Earnings Distribution Cap:

April 30, 2019 for calendar year 2018 earnings

April 30, 2020 for calendar year 2019 earnings

April 30, 2021 for calendar year 2020 earnings

April 30, 2022 for calendar year 2021 earnings

**(ww)** "Pro Rata" means the fraction in which the numerator is the Class 17 Allowed Claim amount and the denominator is the total amount of all Allowed Class 17 claims.

**(xx)** "Pro Rata Share" means, as to holder of an Allowed Class 17 general unsecured claim, the amount determined by multiplying the Earnings Distribution by a fraction, the numerator of which is the Allowed amount of the holder's claim and the denominator of which is the total of Allowed Class 17 claims.

**(yy)** "Reorganized Debtor" means Premier Marine, Inc., a Minnesota corporation as of the Effective Date.

**(zz)** "Schedules" means the schedules of assets and liabilities filed in the Bankruptcy Court by the Debtor, as they may be amended.

**(aaa)** "Sunrise" means Sunrise Fiberglass, LLC, a Minnesota limited liability company.

**(bbb)** "Sunrise Lease" means that certain Lease Agreement between Sunrise and the Debtor dated January 27, 2015, as amended by Addendum dated February 27, 2015.

**(ccc)** "Sunrise Note" means that certain Promissory Note dated May 19, 2017 payable by the Debtor to Sunrise in the principal amount of $192,285.84 pursuant to which amounts owing Sunrise under the Sunrise Lease were acknowledged and made payable according to the terms of the Sunrise Note.

**(ddd)** "Sunrise Secured Claim" means an Allowed claim in the amount of $141,000 secured by a detainer lien in the Fiberglass Molds.

**(eee)** "TD Auto" means TD Auto Finance, LLC, a Michigan limited liability company.

**(fff)** "TD Auto Collateral" means the 2014 Chevrolet Traverse, VIN No. 1GNKVJKDXEJ289414.

**(ggg)** "Tooling" shall mean all Debtor molds, patterns and tooling in Dowco possession pursuant to the Dowco Supply Agreement used by Dowco exclusively for the manufacture of product for the Debtor.

**(hhh)** "Tractor and Trailer" means that certain 2008 Sterling semi-tractor, VIN No. 2FZHCMCV18AY64891 and that certain 2013 MO Trailer, VIN No. 100SM4523CG004802 both of which are subject to the Columbus Auto Lien.

**(iii)** "Trusek" means Trusek, LLC, a Minnesota limited liability company and for purposes of issuance of New Equity only, Trusek or its designee.

**(jjj)** "Trusek Debt Conversion" means the conversion of the Trusek Prepetition Note into New Equity as of the Effective Date.

**(kkk)** "Trusek Prepetition Note" means that certain $500,000 Loan and Security Agreement dated June 16, 2017 and secured by a lien in assets of the Debtor junior in priority to the ABN liens.

**(lll)** "Wells Fargo Canada" means Wells Fargo Capital Finance Corporation Canada.

**(mmm)** "Wells Fargo" means Wells Fargo Commercial Distribution Finance, LLC.

**(nnn)** "Wells Fargo LOC" means that certain Letter of Credit issued by Midwest Bank in favor of Wells Fargo and Wells Fargo Canada to secure performance of Debtor obligations to Wells Fargo and Wells Fargo Canada under the Repurchase Agreements.

**(ooo)** "Wells Fargo Repurchase Agreements" means, collectively, the Vendor Agreement dated January 13, 2005, as amended, between the Debtor and Wells Fargo and the Floorplan Repurchase Agreement dated October 26, 1998 between the Debtor and Wells Fargo Canada pursuant to which the Debtor agreed to repurchase boats financed for a Premier dealer by Wells Fargo and Wells Fargo Canada for 2 years following the purchase date.

**(ppp)** "WFEF" means Wells Fargo Equipment Finance, LLC.

**1.2** **Interpretation**. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The headings in the Plan are for

convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.3** **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code**. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan. The rules of construction in Section 102 of the Bankruptcy Code apply to construction of the Plan.

## ARTICLE 2.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1** **Claims and Equity Interests Classified**. For purposes of organization, voting, and all Plan confirmation matters, except as otherwise provided herein, all claims (except for Administrative Claims and priority tax claims) and all equity interests shall be classified as set forth in Section 2.3 of the Plan.

**2.2** **Administrative Claims and Priority Tax Claims**. As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and priority tax claims against Debtor or its bankruptcy estate shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such claims shall be treated separately as unclassified claims on the terms set forth in Article 5 of the Plan. The Debtor is unaware of any priority tax claims and estimates the claims at zero. The Debtor pays for raw materials, parts and furniture in advance or on delivery. The Debtor is current in payment of administrative liabilities except for budgeted, accrued and unapproved professional fees and wage and salary accrual in the ordinary course. The Debtor estimates that accrued and unpaid administrative liabilities including the DIP Loan as of a February 1, 2018 will be $2,613,910.

**2.3** **Claim Classification**. The Plan classifies the claims as follows:

**(a)** Class 1 - priority non-tax claims. The claims are comprised solely of employee unpaid vacation accrual in the approximate amount of $218,700.00 and unpaid wage priority claims of independent sales representatives in the approximate amount of $18,583.63.

**(b)** Class 2 – Allowed claim of ABN in the amount of $6,491,041.66, exclusive of any claim for attorney's fees and costs, secured by a lien in the Debtor's equipment, inventory, accounts, general intangibles and all proceeds of the foregoing.

**(c)** Class 3 - Allowed claim of Trusek for the Trusek Prepetition Note in the amount of $500,000, exclusive of any claim for attorney's fees and costs, and secured by a lien in all Debtor assets junior in priority to the ABN liens.

**(d)** Class 4 - Allowed claim of Trusek in the amount of $2,000,000 secured by a lien in all Debtor assets junior in priority to the ABN lien and a lien in the Midwest Deposit. The Class 4 claim represents the unpaid principal balance of the DIP Loan and is entitled to administrative priority under the Plan and in chapter 7 liquidation. The DIP

Loan, including any claim for attorney's fees and costs, must be paid in cash on the Effective Date unless Trusek otherwise agrees.

  **(e)**  Class 5 – Allowed claim of Columbus Auto in the amount of $28,371.36 secured by a statutory lien in the Tractor and Trailer.

  **(f)**  Class 6 – Allowed claim of Dowco in the amount of $200,000 secured by the Dowco Lien. The Dowco Claims less the Dowco Lien and any additional Dowco claim arising from rejection of the Dowco Supply Agreement, shall be treated as a Class 17 general unsecured claim. The Dowco Claims, exclusive of the Allowed Class 6 claim, are disputed.

  **(g)**  Class 7 – Allowed claim of Farnam in the amount of $33,217.41, less interest payments received after the Petition Date, secured by specific equipment.

  **(h)**  Class 8 – Allowed claim of FMC in the amount of $27,934.53, less interest payments received after the Petition Date, secured by a lien 2015 Ford F-350.

  **(i)**  Class 9 – Allowed claim of FMC in the amount of $32,496.55, less interest payments received after the Petition Date, secured by a lien 2015 Ford Explorer.

  **(j)**  Class 10 – Allowed claim of Midwest Bank in the amount of $1,000,000 secured by a lien in the Midwest Deposit.

  **(k)**  Class 11 – Contingent and unliquidated claim of Northpoint filed as Claim No. 89 in the amount of $538,000 secured by a lien in the Northpoint Deposit ($41,072.50).

  **(l)**  Class 12 – Allowed claim of Sunrise in the amount of $192,362.89 secured by the Sunrise Secured Claim in the amount of $141,000.

  **(m)**  Class 13 – Allowed claim of TD Auto in the amount of $21,820.27, less interest payments received after the Petition Date, secured by a lien 2014 Chevrolet Traverse.

  **(n)**  Class 14 – Contingent and unliquidated claim of Wells Fargo Canada filed as Claim No. 82 in the amount of $837,982.56 secured by the Wells Fargo LOC.

  **(o)**  Class 15 – Contingent and unliquidated claim of Wells Fargo filed as Claim No. 81 in the amount of $1,894,976.96 secured by the Wells Fargo LOC.

  **(p)**  Class 16 – Allowed claim of WFEF in the amount of $198,238.87 secured by a lien in specific equipment.

  **(q)**  Class 17 – Scheduled unsecured claims total approximately $8,107,665.00, exclusive of rejection claims arising from sales representative, equipment lease, real estate lease and supply agreements. The Debtor estimates that total allowed Class 17 claims will be in the range of $8,000,000 to $13,000,000.

**(r)** Class 18 – All equity interests in the Debtor.

## ARTICLE 3.

## IDENTIFICATION OF IMPAIRED CLASSES
## OF CLAIMS AND EQUITY INTERESTS

**3.1** **Unimpaired Classes of Claims and Equity Interests**. Class 1 is not impaired under the Plan.

**3.2** **Impaired Classes of Claims**. All classes of claims and interests are impaired under the Plan except Class 1.

## ARTICLE 4.

## TREATMENT OF
## CLASSES OF CLAIMS

**4.1** **Claims**. The classes of claims against Debtor shall be treated as follows:

**(a)** **Class 1 - Priority Non-Tax Claims**. The Debtor has no priority non-tax claims except accrued and unused vacation pay of approximately $218,700.00 and priority wage claims of approximately $18,583.63. All holders of such claims who remain employees of the Debtor will receive payment by continuing to receive such vacation pay in the ordinary course of business. To the extent that such holders are no longer employed by Debtor, each holder of a priority non-tax claim against Debtor shall receive on the Distribution Date (i) the amount of such holder's Allowed claim in one cash payment, not to exceed $12,850 in the case of wages, salaries and commissions; or (ii) such other treatment as may be agreed upon in writing by Debtor and such holder.

**(b)** **Class 2 – Claim of ABN**. In satisfaction of the Allowed Class 2 claim the holder shall receive (i) monthly payments of principal and interest on the 715 Loan in the amount of $65,380 commencing on the first day of the first calendar month following the Effective Date. The 715 Loan shall accrue interest at the rate of 5.75% per annum and become payable in full on the last day of the 36th calendar month following the month in which the Reorganized Debtor first makes a Plan distribution to the holder of the Allowed Class 2 claim; plus (ii) monthly payments of principal and interest on the 714 Loan in the amount of $7,692.65 commencing on the first day of the first calendar month following the Effective Date. The 714 Loan shall accrue interest at the rate of 4.5% per annum and shall mature and become payable in full on the last day of the 36th calendar month following the month in which the Reorganized Debtor first makes a Plan distribution to the holder of the Allowed Class 2 claim; plus (iii) monthly payments of principal and interest on the Credit Card Loan in the amount of $4,320.80 commencing on the first day of the first calendar month following the Effective Date. Interest shall accrue on the Credit Card Loan at the rate of 6.9%. The Credit Card Loan shall mature and become payable in full on the last day of the 36th calendar month following the month in which the Reorganized Debtor first makes a Plan distribution to the holder of the Allowed Class 2 claim. The Allowed Claim shall continue to be secured by the

collateral securing the claim on the Petition Date. ABN shall retain all liens and encumbrances against the assets of the Reorganized Debtor as it held on the Petition Date against the Debtor, with the same dignity, priority and effect as its pre-Petition Date liens and encumbrances. The prepetition loan documents shall be cancelled and replaced by this Section 8.5. The prepetition security documents shall remain in full force and effect. Upon satisfaction of the Debtor Repurchase Obligations to Wells Fargo and Wells Fargo Canada and termination of the Wells Fargo LOC, the Debtor shall deliver the Midwest Deposit to ABN for application to the principal balance owing on Loan Number 715. ABN and the Reorganized Debtor may enter into new loan documents on terms mutually acceptable to the parties.

**(c)** **Class 3 – Trusek.** The Trusek Prepetition Note shall be converted to New Equity as of the Effective Date and the Trusek Prepetition Note cancelled.

**(d)** **Class 4 – Trusek.** The Trusek DIP Loan shall be amortized and paid over 120 months. Interest shall accrue at the rate of 10% per annum. Trusek shall receive monthly payments of principal and interest each in the amount of $26,430.15 commencing on the first day of the first calendar month following the Effective Date. Trusek shall retain its lien in all assets off the Debtor junior in priority to the ABN liens and its lien in the Midwest Deposit. The DIP Loan loan and security documents shall remain in full force and effect.

**(e)** **Class 5 – Columbus Auto.** In satisfaction of its Allowed Class 5 claim Columbus Auto shall receive on the Effective Date a cash payment in the amount of $28,371.36 provided Columbus Auto has released the Tractor and Trailer to the Debtor.

**(f)** **Class 6 – Dowco.** The Dowco Secured Claim shall be amortized and paid over 60 months. Interest shall accrue at the rate of 4% per annum. Dowco shall receive 60 equal monthly payments of principal and interest in the amount of $3,683.30 commencing on the first day of the first calendar month following the Effective Date. Dowco shall retain the Dowco Lien pending satisfaction of the Dowco Secured Claim. The Reorganized Debtor may demand surrender and turnover of the Tooling on 5 days written notice and take possession of the Tooling upon satisfaction of the Dowco Secured Claim and payment of any postpetition invoices then outstanding.

**(g)** **Class 7 – Farnam.** In full payment of its Allowed Class 7 claim, the holder shall continue to receive monthly payments of principal and interest at the non-default rate per the terms of the prepetition loan documents. The claim may be prepaid at any time without penalty. The claim shall continue to be secured by the collateral securing the claim on the Petition Date.

**(h)** **Class 8 – Claim of FMC.** In full payment of its Allowed Class 8 claim, the holder shall continue to receive monthly payments of principal and interest at the non-default rate per the terms of the prepetition loan documents. The claim, inclusive of any attorney's fees, shall be paid in full on or before the Maturity Date. The claim may be prepaid at any time without penalty. The claim shall continue to be secured by the collateral securing the claim on the Petition Date.

**(i)** **Class 9 – Claim of FMC.** In full payment of its Allowed Class 9 claim, the holder shall continue to receive monthly payments of principal and interest at the non-default rate per the terms of the prepetition loan documents. The claim, inclusive of any attorney's fees, shall be paid in full on or before the Maturity Date. The claim may be prepaid at any time without penalty. The claim shall continue to be secured by the collateral securing the claim on the Petition Date.

**(j)** **Class 10 – Midwest Bank.** Midwest Bank shall retain the Midwest Deposit until the Wells Fargo LOC is terminated without liability to Midwest Bank.

**(k)** **Class 11 – Northpoint.** Claim Number 89 shall be disallowed. The Reorganized Debtor shall assume any boat purchase obligations arising under the Northpoint Repurchase Agreement. Northpoint shall retain its lien and interest in the Northpoint Deposit to secure boat repurchase obligations. Upon expiration of repurchase obligations without liability to Northpoint, Northpoint shall cause the Northpoint Deposit to be returned to the Reorganized Debtor.

**(l)** **Class 12 – Sunrise.** In satisfaction of the Sunrise Secured Claim, Sunrise shall receive 60 monthly payments each in the amount of $2,350.00 commencing on the first day of the first calendar month following the Effective Date. Sunrise shall retain its lien in the Fiberglass Molds pending satisfaction of the Sunrise Secured Claim. The balance of the Allowed Class 12 Claim owing Sunrise shall be treated as a Class 17 general unsecured claim.

**(m)** **Class 13 – Claim of TD Auto.** In satisfaction of the TD Auto claim the Debtor surrenders all right, title and interest in the TD Auto collateral.

**(n)** **Class 14 – Wells Fargo Canada.** Claim Number 14 shall be disallowed. The Reorganized Debtor shall assume any boat purchase obligations arising under the Wells Fargo Repurchase Agreements. Wells Fargo Canada shall retain its lien or interest in the Wells Fargo LOC to secure boat repurchase obligations. Upon expiration of repurchase obligations without liability to Wells Fargo Canada or Wells Fargo, Wells Fargo Canada shall cause the Wells Fargo LOC to be terminated.

**(o)** **Class 15 – Wells Fargo.** Claim Number 81 shall be disallowed. The Reorganized Debtor shall assume any boat purchase obligations arising under the Wells Fargo Repurchase Agreement . Wells Fargo shall retain its lien or interest in the Wells Fargo LOC to secure boat repurchase obligations. Upon expiration of repurchase obligations without liability to Wells Fargo or Wells Fargo Canada, Wells Fargo shall cause the Wells Fargo LOC to be terminated.

**(p)** **Class 16 – WFEF.** In full payment of its Allowed Class 16 claim, the holder shall continue to receive monthly payments of principal and interest at the non-default rate per the terms of the prepetition loan documents. The claim, exclusive of any attorney's fees, shall be paid in full on or before the Maturity Date. The claim may be prepaid at any time without penalty. The claim shall continue to be secured by the collateral securing the claim on the Petition Date.

**(q)** **Class 17 – General Unsecured Claims.** The holders of Allowed Class 17 claims shall receive a Pro Rata Share of Annual Earnings Distributions on the Earning Distribution Dates, subject to the Minimum Earnings Distribution and the Earnings Distribution Cap.

**(r)** **Class 18 – Equity Interests.** All Class 18 equity interests in Debtor shall be cancelled and the holders of Class 18 equity interests shall receive nothing under the Plan.

# ARTICLE 5.

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS

**5.1** **Administrative Claims**.  Each holder of an allowed Administrative Claim (except any such holder that agrees to different treatment) shall receive the full amount of such claim, in cash, on the Distribution Date; provided, however, that allowed Administrative Claims representing (a) postpetition liabilities incurred in the ordinary course of business by the Debtor and (b) postpetition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

**5.2** **Priority Tax Claims**. The holder of an Allowed priority tax claim, in full satisfaction of its claim, shall receive payment of that claim in 16 equal quarterly installments (representing payment of the claim plus interest at the applicable federal rate of 2% per annum) commencing March 1, 2018 and continuing on the first day of each consecutive calendar quarter thereafter until a total of 16 payments have been made.  The Debtor is presently unaware of any tax claims.

**5.3** **United States Trustee Fees**. Fees payable by Debtor under 28 U.S.C. § 1930 will be paid in full on the Effective Date.  In addition, following confirmation, the Debtor will timely pay all fees incurred pursuant to 28 U.S.C. §§1930(a)(6) and will file with the Court and serve on the U.S. Trustee a monthly financial report in the prescribed format, for each month or part thereof that the case remains open.  The Debtor is current in payment of U.S. Trustee fees.

# ARTICLE 6.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**6.1** **Classes Entitled to Vote**. Each impaired class of claims shall be entitled to vote to accept or reject the Plan.  All unimpaired classes shall not be entitled to vote to accept or to reject the Plan.  All classes of claims and interest except Class 1 are impaired under the Plan and entitled to vote to accept or reject the Plan.  Class 18 is deemed to have rejected the Plan.

**6.2     Class Acceptance Requirement**.  A class of claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed claims of such class that vote on the Plan.

**6.3     Cramdown**.  The Debtors request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE 7.

## MEANS FOR EXECUTION OF THE PLAN

**7.1     Summary.**  As of the Effective Date Trusek will make the Equity Contribution in exchange for the New Equity and assume control of the business of the Reorganized Debtor. The Reorganized Debtor will continue to manufacture and sell the Premier line of pontoon boats in the ordinary course and will perform its obligations to creditors under the Plan.

**7.2     Revesting of Property.**  On the Effective Date, all property of the Debtor shall vest in the Reorganized Debtor, free and clear of all claims, interests, liens, charges or other encumbrances, except as otherwise provided in the Plan.

**7.3     Ownership of the Reorganized Debtor.**  On the Effective Date the Reorganized Debtor will issue 100 Shares of common stock representing 100% of the equity in the Reorganized Debtor to Trusek in exchange for the Equity Contribution.

**7.4     Governance of the Reorganized Debtor.**  As of the Effective Date Trusek will elect a board of directors.  The board of directors of the Reorganized Debtor shall consist of the following director: Terry Astleford.

**7.5     Management of the Reorganized Debtor, Executive Compensation.**  Trusek is interviewing prospective new officers and will supplement the Disclosure Statement before the objection deadline and identify the chief executive officer, secretary and treasurer and any other individual to serve as an officer of the Reorganized Debtor as of the Effective Date.

**7.6     Conversion of Sub S to C Corp Tax Treatment.**  As of the Effective Date the Reorganized Debtor will not elect subchapter S tax treatment and will operate as a C Corp for tax purposes.

**7.7     Rejection of Dealer Agreements.**  As of the Effective date the Dealer Agreements will be rejected.  The Reorganized Debtor will offer dealers the opportunity to enter into a New Dealer Agreement in the sole discretion of the Reorganized Debtor.

**7.8     Assumption of Warranty Claims.**  As of the Effective date the Reorganized Debtor will assume all manufacturer warranties made to dealers and customers through the date of Plan confirmation.

**7.9     Assumption of Repurchase Obligation.**  As of the Effective Date the Reorganized Debtor will assume the Debtor repurchase obligations owing Wells Fargo, Wells Fargo Canada and Northpoint under the Wells Repurchase Agreements and Northpoint Repurchase Agreement.

**7.10** **Retention of GuideSource.** The Reorganized Debtor will continue to employ Guidesource as a financial advisor to assist in management transition and to oversee and assist management in all aspects of financial reporting, cash management and other such services as the Debtor and GuideSource may agree.

**7.11** **Organizational Documents.** As of the Effective Date the Articles of Incorporation and Bylaws will be cancelled and the board of the Reorganized Debtor will adopt the Amended and Restated Articles and Bylaws.

**7.12** **Insider Employment Agreements.** The Plan provides for cancellation of all Equity Interests and the issuance of the New Equity to Trusek. No Insider will serve as an officer or director of the Reorganized Debtor. No insider will have a contractual right to acquire New Equity.

**7.13** **Insider Retention.** Trusek desires to retain Lori Melbostad, Robert Menne, Jr. and Betty Menne as employees of the Reorganized Debtor for a minimum term of one year subject to the terms and conditions of the Insider Employment Agreements. A summary of the economic terms of the Insider Employment Agreements is set forth below:

Lori Melbostad
Position: Senior Vice President
Annual Salary $144,000.00
Bonus compensation formula 3% of earnings before income tax profits in excess of Plan financial projections.
Benefits description Company provided automobile and participation in employee benefits program.
3 year non compete in pontoon industry

Robert Menne, Jr.
Position: Ambassador, Dealer Relations
Annual Salary $85,800.00
Bonus compensation formula 1% of earnings before income tax profits in excess of Plan financial projections.
Benefits description Automobile allowance and participation in employee benefits program.
3 year non compete in pontoon industry

Betty Menne
Position: Ambassador, Dealer Relations
Annual Salary $61,600.00
Bonus compensation formula 1% of earnings before income tax profits in excess of Plan financial projections.
Benefits description Automobile allowance and participation in employee benefits program.
3 year non compete in pontoon industry

**Exhibit 5** sets forth by name, job description and compensation those additional insiders to be employed by the Reorganized Debtor.

    **7.14**    **ABN Replacement Guaranty.** As of the Effective Date Trusek will provide ABN with a corporate guaranty of all Plan obligations owing ABN. In return, ABN will release the personal guaranties of Robert Menne, Jr and Betty Menne.

    **7.15**    **Hallberg Lease - Wyoming Manufacturing Facility Lease.** The Debtor and Hallberg will enter into an amended and restated lease for the Wyoming Manufacturing Facility effective as of the Effective Date of the Plan.

    **7.16**    **Compensation and Benefit Programs.** All employment and severance practices and policies, employment agreements or understandings, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, managers and employees who served as directors, officers, managers and/or employees before or after the Petition Date, if any, including, without limitation, all savings plans, health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed in accordance with Article 9 of the Plan as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.

    The Debtor will reject its 401(k) plan and related plan administrative agreement. The Reorganized Debtor will adopt a new 401(k) plan as soon as practicable after the Effective Date.

    **7.17**    **Feasibility of the Plan.** Premier has completed its 2018 - 2021 business plan and related projections. A copy of the projections is attached hereto as **Exhibit 2**. The projections demonstrate that the Debtor will be capable of performing its obligations under the Plan.

    **7.18**    **Retention and Waiver of Chapter 5 Avoidance Causes of Action and Insider Claims.** **The Reorganized Debtor retains and waives all claims arising under 11 U.S.C. § 547 against all vendors except claims against Dowco and Lippert. The waiver shall be in satisfaction of any possessory lien in estate property and shall be effective upon release of estate property at the request of the Reorganized Debtor. The Reorganized Debtor will waive claims arising under 11 U.S.C. § 547 against Dowco and Lippert subject to execution of post-confirmation supply agreements.**

    **The Reorganized Debtor retains and waives all claims against insiders effective upon insider execution of the Insider Employment Agreements.**

## ARTICLE 8.

## PROVISIONS GOVERNING DISTRIBUTIONS

    **8.1**    **Means of Cash Payment**. Cash payments made pursuant to the Plan by check drawn on a domestic bank, or by wire transfer from a domestic bank.

    **8.2**    **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, distributions and deliveries to holders of Allowed claims shall be made at the address of each such holder as set

forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if Debtor has been notified of a change of address). If any holder's distribution is returned as undeliverable no further distribution to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.

## ARTICLE 9.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

9.1 **Rejected If Not Assumed**. The Plan constitutes and incorporates a motion by Debtor to reject all executory contracts and unexpired leases to which Debtor is a party, except for any contract or lease that (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (b) is specifically designated on **Exhibit 6** to the Disclosure Statement as a contract to be assumed under the Plan with the amount to be paid to cure any defaults under those contracts and leases as set forth on **Exhibit 6**, or (c) is the subject of a motion to assume or reject that is filed with the Bankruptcy Court not later than five (5) business days before the date when the Ballot is due. The Confirmation Order shall represent and reflect an order of the Bankruptcy Court approving such assumptions and rejections as of the Effective Date and further approving the cure amounts listed on **Exhibit 6** as the sums sufficient to cure all defaults under those contracts and leases.

9.2 **Bar to Rejection Damages**. If the rejection of an executory contract or unexpired lease by Debtor results in damages to the other party or parties to such contract or lease, the claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against Reorganized Debtor or its properties unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor within thirty (30) days after entry of the Confirmation Order.

## ARTICLE 10.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

10.1 **Objection Deadline**. As soon as practicable, but in no event later than the deadline established by the Bankruptcy Court, objections to claims shall be filed with the Bankruptcy Court and served upon the holders of each of the claims to which objections are made.

10.2 **Prosecution of Objections**. After the date of entry of the Confirmation Order, only Reorganized Debtor shall have the authority to file, litigate, settle, or withdraw objections to claims to which objections are filed (the "Contested Claims").

10.3 **No Distributions Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed claim.

**10.4 Administrative Claims Bar Date**. Confirmation of the Plan establishes a bar date for Administrative Claims, which bar date shall be thirty (30) calendar days after the Effective Date. Holders of Administrative Claims that are not paid on the Effective Date may file a motion for payment of administrative expense on or before such bar date. The Reorganized Debtor and any other party in interest will have sixty (60) days after the Administrative Claims bar date to review and object to such Administrative Claims before a hearing for determination of such claims is held by the Bankruptcy Court.

## ARTICLE 11.

## MISCELLANEOUS PROVISIONS

**11.1 Prepayment**. Unless the Plan shall otherwise provide, the Reorganized Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed claim at any time.

**11.2 Retention of Avoidance Claims**. The Debtor shall retain causes of action arising under 11 U.S.C. Sections 547 and 548 of the Bankruptcy Code and Insider Claims.

## ARTICLE 12.

## CONSUMMATION OF THE PLAN

**12.1 Retention of Jurisdiction**.

**(a)** The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for purposes (i) through (x) below:

**(i)** To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of claims;

**(ii)** To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

**(iii)** To determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which Debtor is a party or with respect to which Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all claims arising therefrom;

**(iv)** To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date.

**(v)** To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

**(vi)** To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any person's obligations hereunder;

**(vii)** To consider and act on the compromise and settlement of any claim against or cause of action by or against Debtor's estate;

**(viii)** To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; or

**(ix)** To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order, the Effective Date or the Distribution Date.

**(x)** To determine all adversary proceedings commenced by Debtor or Reorganized Debtor to recover money or property under Chapter 5 of the Bankruptcy Code.

**(b)** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, this section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.2** **Modification of Plan**. Debtor may propose modifications of the Plan in writing at any time before confirmation, provided that (a) the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code; and (b) Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after confirmation and before its substantial consummation only by Debtor provided that (a) the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code; (b) the Bankruptcy Court, after notice and a hearing confirms the Plan as modified under Section 1129 of the Bankruptcy Code; and (c) the circumstances warrant such modification. A holder of a claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

# ARTICLE 13.

## EFFECTS OF PLAN CONFIRMATION

**13.1** **Discharge and Injunction**. Confirmation of the Reorganization Plan results in a discharge of the Debtor pursuant to Section 1141(d) of the Bankruptcy Code. That discharge shall occur on the Effective Date. The discharge provided herein operates, among other things, as an injunction as provided in Section 524 of the Bankruptcy Code.

Respectfully submitted,

Dated: December 8, 2017      PREMIER MARINE, INC.

By _/s/ Lori J. Melbostad_
Its _President_

Dated: December 8, 2017      RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION

By /e/ Michael F. McGrath #168610
    Will R. Tansey #323056

150 S. Fifth Street, Suite 3450
Minneapolis, MN 55402
Telephone:   (612) 332-8511
Facsimile:   (612) 332-8302

ATTORNEYS FOR DEBTOR